J-A01015-21

2021 PA Super 78

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
:
             v.                       :
:
:
ALEJANDRO VELA-GARRETT        :
:
        Appellant          :    No. 133 EDA 2020

Appeal from the Judgment of Sentence Entered October 3, 2019
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000043-2019

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

OPINION BY BENDER, P.J.E.:                    **FILED:  APRIL 23, 2021**

Appellant, Alejandro Vela-Garrett, appeals from the aggregate

judgment of sentence of 42 to 96 months' incarceration, imposed after he was

convicted of, *inter alia*, driving under the influence of a controlled substance

metabolite ("DUI-metabolite"), 75 Pa.C.S. § 3802(d)(1)(iii), and endangering

the welfare of children ("EWOC"), 18 Pa.C.S. § 4304(a)(1).  On appeal,

Appellant challenges the sufficiency of the evidence to sustain his EWOC

conviction, and argues that a new trial is warranted based on the prosecutor's

references to his co-defendant's pleading guilty to that offense.  After careful

review, we reverse Appellant's conviction for EWOC, vacate his judgment of

sentence, and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Following a traffic stop, Appellant was arrested and charged with DUI-metabolite and EWOC, as well as driving under the influence of a drug to a degree that it impairs the ability to safely drive ("DUI-impaired ability"), 75 Pa.C.S. § 3802(d)(2), tampering with physical evidence, 18 Pa.C.S. § 4910(1), possession of a small amount of marijuana, 35 P.S. § 780-113(a)(31)(i), possession of drug paraphernalia, 35 P.S. § 780-113(a)(32), and operating a vehicle without a valid inspection, 75 Pa.C.S. § 4703(a). At Appellant's trial for these offenses, the following evidence was presented.

Pennsylvania State Police Corporal Daniel R. Nilon testified that at approximately 6:30 p.m. on June 11, 2018, he was patrolling in a marked police cruiser when he observed a white BMW that did not "have the required Pennsylvania inspection sticker on the windshield…." N.T. Trial, 7/16/19, at 46. The corporal began following the vehicle and activated his lights. *Id.* The vehicle pulled over, and "[a]s soon as [Corporal Nilon] went up to the driver's door[, he] immediately detected a strong odor of marijuana coming out of the driver's window." *Id.* at 47. Corporal Nilon identified Appellant as the individual who was driving the car, and he testified that Appellant's girlfriend and co-defendant, Tatyana Figueroa-Garcia, and their three-month-old baby were also in the vehicle. *Id.* Corporal Nilon subsequently searched Appellant's vehicle, and discovered a digital scale, and an empty "twisted corner of a baggie[,] which is commonly used to contain some sort of controlled substance…." *Id.* at 49. A bag of marijuana was also found in Ms. Figueroa-Garcia's pants, which Appellant admitted was his. *Id.* at 48, 49.

- 2 -

Corporal Nilon then conducted two field sobriety tests on Appellant, which he described as follows:

> [Corporal Nilon]: I did two tests on [Appellant,] neither of which are the standardized field sobriety tests. They fall under ARIDE,[1] or the testing that goes more towards drug[ged] drivers. One is called lack of convergence. What that does is [that] one effect THC has on your system is … you are unable to keep your eyes crossed. … So I … use a pen called the stimulus for testing and I … go around in a circle and I … bring it in towards … the subject's nose and their eyes would cross as they followed the pen in towards their nose and one eye will not stay crossed. One eye will bounce back out and it cannot remain crossed. That is a direct effect of THC being psycho active in their system. … The other test is one [where] I just ask him to see his tongue. [When s]omeone … has recently smoked marijuana[,] their tongue is going to be green and it's something we commonly see in people who have recently smoked marijuana[,] and those two things were present in [Appellant], lack of convergence in his right eye. His right eye would not remain crossed and then … the green tongue was openly seen by myself and the other troopers at the scene….

*Id.* at 50-51.

Appellant also admitted to Corporal Nilon that he had smoked marijuana, first claiming he had done so the previous night. *Id.* at 51. When the corporal confronted Appellant with the fact that the field sobriety tests showed marijuana was "psycho active in [his] system[,]" Appellant changed his story to claiming he had smoked that morning. *Id.* Corporal Nilon testified that based on his training and experience, "if you're still seeing the indicators of … lack of convergence and the green tongue[,]" it indicates that the

_____

[1] Corporal Nilon testified that he is certified in "what[ is] called ARIDE[,] which is short for advanced roadside impairment detection…." *Id.* at 43. The corporal explained that the certification "is geared toward investigating drugged drivers instead of alcohol" impaired drivers. *Id.*

individual "smoked within the last four to six hours…." *Id.* at 69. Based on these circumstances, Corporal Nilon testified that he believed Appellant was impaired by the influence of marijuana at the time of the vehicle stop. *Id.* at 70, 75. He also testified that, based on his training and experience, he believed that Appellant was impaired to a degree to which he was not able to safely drive his vehicle. *Id.* at 76. Appellant was taken into custody and transported to the hospital for a blood draw, to which he consented. *Id.* at 71, 72. Appellant's blood test revealed that he had forty nanograms per milliliter of THC Delta 9 Carboxy metabolite, which is the inactive metabolite of marijuana. *Id.* at 139, 152, 153.

At the close of Appellant's trial, the jury acquitted Appellant of DUI-impaired ability, but convicted him of DUI-metabolite, EWOC, and the remaining offenses with which he was charged. On October 3, 2019, Appellant was sentenced to the aggregate term set forth, *supra*. He filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents two issues for our review:

1. Whether the evidence presented by the Commonwealth at trial was insufficient to sustain a conviction on the charge of [EWOC]?

2. Whether the trial court abused its discretion and committed an error of law by not giving a cautionary instruction to the jury after the prosecutor disclosed the … co-defendant's guilty plea?

Appellant's Brief at 8.

Appellant first challenges the sufficiency of the evidence to sustain his EWOC conviction. "A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015).

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). The factfinder is free to believe all, part, or none of the evidence presented. *Commonwealth v. Frein*, 206 A.3d 1049, 1063 (Pa. 2019).

The crime of EWOC is defined, in relevant part, as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). EWOC "is a specific intent offense which was enacted in broad terms to safeguard the welfare and security of children." *Commonwealth v. Fewell*, 654 A.2d 1109, 1117 (Pa. Super. 1995) (citation omitted). To be convicted under this statute, the Commonwealth must prove a "knowing violation of a duty of care." *Id.* (quoting *Commonwealth v. Cardwell*, 515 A.2d 311, 313 (Pa. Super. 1986)).

- 5 -

Moreover, this Court has employed a three-prong standard to determine whether the Commonwealth has met its burden of establishing the intent element of the EWOC offense. … [T]o support a conviction under the EWOC statute, the Commonwealth must establish each of the following elements: (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

***Commonwealth v. Wallace***, 817 A.2d 485, 490-91 (Pa. Super. 2002) (citations and internal quotation marks omitted). Section 4304 is to be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted. ***Commonwealth v. Taylor***, 471 A.2d 1228, 1231 (Pa. Super. 1984).

Here, Appellant focuses his argument on the second prong of the EWOC test, claiming that "the Commonwealth failed to introduce sufficient evidence to show that [Appellant] 'knowingly' placed his child in a situation that would threaten the child's physical or psychological welfare." Appellant's Brief at 18. He elaborates:

The evidence introduced at trial showed that [Appellant] was the subject of a traffic stop that was initiated because the inspection sticker on [Appellant's] vehicle did not match the license plate. Specifically, the inspection sticker was from the [s]tate of New York while the license plate was registered in Pennsylvania. There is no evidence that [Appellant] was speeding, driving erratically, weaving or taking any other action that would indicate he was under the influence of drugs or alcohol. In fact, Corporal Nilon testified that [Appellant] exhibited no pre[-] or post[-]stop indicators of impairment.

The only evidence presented by the Commonwealth regarding [Appellant's] alleged impairment was the testimony of Corporal

- 6 -

Nilon regarding the field sobriety tests given to [Appellant]. The field sobriety tests were conducted because Corporal Nilon smelled marijuana in the vehicle, not because [Appellant] exhibited signs of impairment. There was never testimony that [Appellant] showed any signs of impairment prior to the initiation of the test performed pursuant to Corporal Nilon's ARIDE training. Corporal Nilon testified that [Appellant] exhibited a lack of convergence and had a green tongue. In addition to the [c]orporal's finding, [Appellant] admitted to smoking marijuana that morning.

Corporal Nilon testified, pursuant to his training, that the psychoactive ingredient in marijuana remains in your system and active for 4 to 6 hours. However, the Commonwealth never established when [Appellant] last smoked marijuana in relation to the time of the stop and whether the marijuana would have been active at any point while operating the vehicle. In fact, [Appellant] told Corporal Nilon that he smoked marijuana earlier that morning[,] which was in excess of 6½ hours prior to the time of the stop. Given [Appellant's] statement to Corporal Nilon and Corporal Nilon's testimony that the psycho-active ingredient of marijuana remains in the system from 4 to 6 hours, the conclusion must be drawn that [Appellant] did not drive with a psycho-active ingredient of marijuana in his system.

Based on the foregoing, the Commonwealth failed to present any evidence that [Appellant] was aware that the child was in circumstances that could threaten the child's physical or psychological welfare.

*Id.* at 18-20.

Initially, Appellant is incorrect that there was no evidence to support that he drove while impaired by the psycho-active effects of the marijuana he admitted to smoking. As stated, *supra*, Corporal Nilon testified that Appellant's lack of convergence was a "direct effect" of THC being psycho-active in Appellant's system. *See* N.T. Trial, 7/16/19, at 50. The corporal further testified that, based on the totality of the circumstances and his observations of Appellant, he believed Appellant was impaired. *Id.* at 76.

Nevertheless, based on two cases discussed, *infra*, we agree with Appellant that the fact of his impairment, alone, did not demonstrate that he knowingly placed his child in danger by driving with the child in the vehicle. First, in ***Commonwealth v. Mastromatteo***, 719 A.2d 1081 (Pa. Super. 1998), the appellant was driving her vehicle with her young son in the car when a police officer observed her vehicle drift over the middle line three times. ***Id.*** at 1082. When the officer stopped her car, he observed an open container of alcohol in the front seat, and the appellant was exhibiting signs of impairment. ***Id.*** After she failed field sobriety tests, a blood draw was conducted, which revealed that her blood alcohol content was .168 and she had 570 nanograms per deciliter of marijuana in her system. ***Id.*** Based on this evidence, the appellant was convicted of DUI and recklessly endangering another person (REAP).[2] On appeal, we reversed, holding that "driving under the influence of intoxicating substances does not create legal recklessness *per se*[,] but must be accompanied with other ***tangible indicia of unsafe driving*** to a degree that creates a substantial risk of injury which is consciously disregarded." ***Id.*** at 1083 (emphasis added).

Second, in ***Commonwealth v. Hutchins***, 42 A.3d 302 (Pa. Super. 2012), Hutchins was driving with his three young daughters in the vehicle when he made a left turn in front of another car, causing a serious accident.

_____

[2] We noted that the appellant's REAP conviction seemed to be based both on the danger she posed to other drivers, as well as "the fact that [the] appellant had her son in the car." ***Id.*** at 1082 n.2.

*Id.* at 304. A responding police officer smelled, and then found, marijuana in Hutchins' vehicle. *Id.* The officer also observed that Hutchins' demeanor was "unusually calm" and "flat line" after the accident, his "pupils seemed 'constricted[,]'" and he "admitted to smoking marijuana earlier in the day." *Id.* at 304-05. The officer testified at trial that, "based on his experience and training, [Hutchins] was under the influence of marijuana and that this had an impairing effect on his ability to drive." *Id.* The officer did not conduct field sobriety tests, but Hutchins' blood was subsequently drawn, revealing "43ng/ml of carboxy acid[,]" a metabolite of marijuana. *Id.* Based on this evidence, Appellant was convicted of DUI-impaired ability, as well as four counts of REAP.

On appeal, Hutchins challenged the sufficiency of the evidence to sustain his convictions. We affirmed his DUI-impaired ability conviction, concluding that "there was sufficient evidence to establish that the accident was caused as a result of [Hutchins'] inability to safely operate a vehicle due to the influence of marijuana." *Id.* at 309. Notwithstanding, we reversed his REAP convictions. We explained:

> [Hutchins'] acts in this matter are deplorable; he got high on an illegal substance and then drove his three young daughters in his vehicle, resulting in an accident injuring all three of his daughters and another innocent driver. Nevertheless, we are constrained to agree that, absent additional evidence of his reckless driving or conduct, the evidence was insufficient to establish that [Hutchins] recklessly endangered the lives of others. Based upon our holding in *Mastromatteo* and its progeny, the Commonwealth was required to present evidence of recklessness **in addition to** [Hutchins'] intoxication. The only other relevant evidence

- 9 -

presented in this matter is that an accident occurred. However, that [Hutchins] exercised poor judgment in negotiating a left turn does not equate to recklessness. Unlike the defendant's conduct in [*Commonwealth v.*] *Sullivan*[, 864 A.2d 1246, 1250 (Pa. Super. 2004) (affirming the defendant's REAP conviction where, while intoxicated, the defendant drove one quarter mile in the wrong direction on an off ramp, which we held "constitute[d] tangible indicia of unsafe driving and sufficiently established the *mens rea* necessary for a[n] REAP conviction"),] and [*Commonwealth v.*] *Jeter*, [937 A.2d 466, 469 (Pa. Super. 2007) (distinguishing the case from *Mastromatteo*, and holding that the evidence that Jeter weaved in and out of the roadway and other drivers for several miles, had a blood alcohol level of 0.21, and ultimately lost control of his car and striking the center barrier, was sufficient to sustain his conviction for reckless driving)], [Hutchins] was not observed acting recklessly, for example dangerously weaving through traffic in an aggressive manner, or driving the wrong way on an off ramp. Consequently, we are constrained to vacate [Hutchins'] judgment of sentence with respect to his three REAP convictions.

*Id.* at 312.

Based on *Mastromatteo* and *Hutchins*, it is clear we must reverse Appellant's EWOC conviction. As in this case, there was evidence establishing that Mastromatteo and Hutchins were impaired when they drove their vehicles. While both Mastromatteo and Hutchins exhibited *some* form of unsafe driving — with Mastromatteo's swerving over the middle line three times, and Hutchins' causing a serious accident with another vehicle — our Court held that additional evidence of reckless driving or conduct was necessary for the Commonwealth to establish that Mastromatteo or Hutchins had recklessly endangered the lives of the young children in their vehicles. Here, Corporal Nilon did not observe *any* unsafe driving by Appellant, or any other conduct that would constitute a "tangible indicia of unsafe driving to a

degree that creates a substantial risk of injury which [was] consciously disregarded." **Mastromatteo**, 719 A.2d at 1083. Accordingly, the evidence was insufficient to demonstrate that Appellant acted **recklessly**.

Because we cannot conclude that Appellant even recklessly endangered his child, we certainly cannot conclude that he **knowingly** did so, as his conviction for EWOC requires. The terms "knowingly" and "recklessly" are defined by the Crimes Code, as follows:

> (2) A person acts knowingly with respect to a material element of an offense when:
>
>> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>>
>> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(2), (3). It is clear that EWOC's *mens rea* of "knowingly" involves a higher level of culpability than REAP's *mens rea* of "recklessly." **See Commonwealth v. Martir**, 712 A.2d 327, 329 (Pa. Super. 1998) ("[A] conviction for [EWOC] requires proof that the accused acted 'knowingly,' *i.e.*, that the accused not only knew that he has a duty to protect the child but also knew that the child was placed in circumstances that could threaten the

child's welfare. A conviction for [REAP] obviously requires proof that the accused acted **only** recklessly. Thus, a person could never be convicted of [EWOC] based upon reckless conduct alone.") (emphasis in original). Therefore, because Appellant's conduct did not amount to recklessness under the reasoning of **Mastromatteo** and **Hutchins**, it is clear that the Commonwealth failed to prove that Appellant knowingly endangered the welfare of his child. Consequently, we reverse his conviction for EWOC.

Next, Appellant argues that he is entitled to a new trial based on the prosecutor's eliciting testimony that Appellant's co-defendant had pled guilty to EWOC, and then again referring to his co-defendant's EWOC guilty plea in closing arguments. **See** N.T. Trial, 7/16/19, at 76 (the Commonwealth's asking Corporal Nilon if "Miss [Figueroa-]Garcia has already pled guilty to [EWOC]" and Corporal Nilon's answering, "Yes"); N.T. Trial, 7/17/19, at 42 (the Commonwealth's asking the jury to "keep in mind that the co-[d]efendant … pled guilty already to [EWOC]. So even she recognizes that what [she] and [Appellant] did that day endangered and violated a duty of protection and care and support for that baby"). According to Appellant, "[t]his evidence caused an incurable prejudice against [him] that the [c]ourt failed to attempt to cure with any cautionary jury instructions." Appellant's Brief at 22.

Appellant has waived this claim for our review. He did not object to the at-issue question and answer by Corporal Nilon, and he did not object to the prosecutor's remarks about his co-defendant's guilty plea during closing arguments. Appellant also does not point to where he asked the court to

provide a curative instruction. Consequently, we conclude that Appellant's second issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[3]

In sum, we reverse Appellant's EWOC conviction, for which he received a sentence imposed to run consecutively to his other terms of incarceration. Because this disposition upsets the trial court's overall sentencing scheme, we vacate Appellant's judgment of sentence and remand for resentencing. *See **Commonwealth v. Tanner***, 61 A.3d 1043, 1048 (Pa. Super. 2013) (concluding that our vacating a sentence imposed to run consecutively to Tanner's other sentences had "disturbed the trial court's overall sentencing scheme" and, thus, a remand for resentencing was required).

EWOC conviction reversed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/21

---

[3] In any event, it would also appear that Appellant's argument that he was prejudiced by the admission of this evidence is rendered moot by our reversal of his EWOC conviction.