J-A27022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TARAH ELIZABETH CORDIER | : | No. 140 MDA 2022 |

Appeal from the Order Entered January 5, 2022
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001010-2021

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MARCH 30, 2023**

The Commonwealth appeals from the order granting *habeas corpus* relief to Tarah Elizabeth Cordier on her endangering the welfare of children ("EWOC")[1] charges. Because we find that the Commonwealth set forth sufficient *prima facie* evidence of EWOC, we reverse and remand.

Based on the evidence at the preliminary and *habeas corpus* hearings, which we view at this stage in the light most favorable to the Commonwealth,[2] the facts of this case are as follows. On June 12, 2021, around 11:02 p.m., Trooper Nathan McHugh of the Pennsylvania State Police was dispatched to 2442 Fairfield Road in Adams County for an automobile crash. N.T. Preliminary

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4304(a)(1).

[2] *See Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003).

Hearing, 8/18/21, at 4. When he arrived at the scene, he observed an SUV sitting in a ditch right next to the roadway. *Id.* The car was partially elevated in the air with the passenger side tires in the ditch. N.T. *Habeas Corpus* Hearing, 12/6/21, at 5-6. Inside the vehicle was Cordier in the driver's seat and her three children, ages three, five, and seven, in the backseat. N.T. Prelim. Hrg. at 4-5. Trooper McHugh observed that although the children had age-appropriate car restraints, they were not secured to those restraints when he arrived. *Id.* at 5, 11. Although there were no injuries, the vehicle was not operable and had damage to the front right wheel tire and bumper. *Id.* at 5. The driver's seat airbag was also deployed. *Id.*

Cordier told Trooper McHugh that she was coming from a friend's house and drove off the roadway. *Id.* at 6. Cordier was argumentative and did not provide an explanation as to why she had gone off the roadway. *Id.* at 12-13. She stated that she had several drinks before driving the vehicle. *Id.* at 6, 13. Trooper McHugh observed several bottles of alcohol in the backseat below the children's feet. *Id.* The bottles appeared to be open, and some bottles were partially filled. *Id.* at 6. Trooper McHugh observed that Cordier's pupils were dilated, her eyes were glassy and bloodshot, her breath smelled like alcohol, and her speech had a very thick slur. *Id.* at 7. After Cordier showed signs of impairment during a field sobriety test, Trooper McHugh arrested her. *Id.* He transferred her to the hospital where her blood was drawn at 12:22 a.m. *Id.* at 8. Her blood tests revealed that she had a blood alcohol concentration

("BAC") of 0.219 and amphetamine, Delta-9 carboxy THC, Delta-9 THC, Venlafaxine, and Doxylamine in her system. *Id.* at 9.

Cordier was charged in June 2021 with three counts of EWOC and one count of driving under the influence of alcohol ("DUI").[3] A preliminary hearing was held on August 18, 2021, and all charges were bound over for trial. On September 28, 2021, the Commonwealth filed a criminal information and added six additional counts of DUI. The Commonwealth amended the criminal information on October 7, 2021, to change the grading on Count 3 of the EWOC charges from a misdemeanor of the first degree to a felony of the third degree.

Cordier filed a motion for writ of *habeas corpus*, on October 18, 2021, arguing that the Commonwealth had failed to present a *prima facie* case on the EWOC charges. Following argument on December 6, 2021, the court granted the motion and dismissed the three EWOC charges. The Commonwealth appealed, certifying pursuant to Pa.R.A.P. 311(d) that the order granting of the writ terminates or substantially handicaps its prosecution.

The Commonwealth raises the following issue:

> Did the lower court err when it decided that the facts, taken in the light most favorable to the Commonwealth, do not establish a *prima facie* case for endangering welfare of children pursuant to 18 Pa.C.S.A. § 4304(a)(1)?

---

[3] 75 Pa.C.S.A. § 3802(a)(1).

- 3 -

Commonwealth's Br. at 6.

When reviewing an order that grants *habeas corpus* relief, we face a question of law for which "our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. McClelland***, 233 A.3d 717, 732 (Pa. 2020).

At the preliminary hearing stage of a criminal case, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt. Rather, its burden is merely to put forth a *prima facie* case of the guilt. ***Commonwealth v. McBride***, 595 A.2d 589, 591 (Pa. 1991). "A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa.Super. 2016) (*en banc*). "[T]he *prima facie* showing is a low threshold for the Commonwealth to surpass." ***Commonwealth v. Munson***, 261 A.3d 530, 540 (Pa.Super. 2021). A *prima facie* case exists when the Commonwealth "produce[s] evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." ***Dantzler***, 135 A.3d at 1112 (citation omitted). Further, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." ***Huggins***, 836 A.2d at 866 (citation omitted) (alteration in original).

The Commonwealth contends it established a *prima facie* case of EWOC. It argues that it presented evidence that Cordier knowingly violated a duty of

- 4 -

care to her children by "knowingly and voluntarily mix[ing] copious amounts of alcohol and several other controlled and prescription substances, before getting behind the wheel." Cordier's Br. at 17. It maintains that the facts demonstrated that Cordier caused a disabling vehicle crash, leaving the vehicle in a ditch and partially elevated in the air. *Id.* at 17-18. The facts further showed that open bottles of alcohol were found in Cordier's car, the children were not properly restrained in their car seats, and Cordier could not explain a reason for the crash. *Id.* at 16, 18. The Commonwealth thus concludes these facts demonstrate that Cordier "knowingly put her children's safety and livelihood at risk of serious bodily injury." *Id.* at 10-11.

Cordier, on the other hand, argues the Commonwealth failed to establish the requisite *mens rea* for EWOC, *i.e.*, that she knowingly endangered the welfare of her children. Cordier's Br. at 10. Citing ***Commonwealth v. Vela-Garrett***, 251 A.3d 811 (Pa.Super. 2021), she argues the single fact of driving while intoxicated with children in a vehicle does not establish the "knowing" *mens rea* for EWOC. *Id.* at 10, 14. According to Cordier, the evidence did not even show that her conduct amounted to the lesser *mens rea* of recklessness that is required to establish the crime of recklessly endangering another person ("REAP"). *Id.* at 14.

The sole issue is whether the Commonwealth produced sufficient *prima facie* evidence of the *mens rea* element of the EWOC statute. The crime of EWOC is defined, in relevant part, as follows:

> **(a) Offense defined.--**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1).

EWOC "is a specific intent offense which was enacted in broad terms to safeguard the welfare and security of children." **Commonwealth v. Fewell**, 654 A.2d 1109, 1117 (Pa.Super. 1995). "To convict an accused of this statute, the Commonwealth must prove a 'knowing violation of a duty of care." **Id.** (citation omitted). "Knowingly" is defined in the Crimes Code as follows:

**(b) Kinds of culpability defined.--**

***

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2)(i), (ii).

We employ a three-prong analysis to ascertain whether the Commonwealth's evidence is sufficient to prove that a defendant knowingly violated a duty of care under the EWOC statute: "(1) the accused must be aware of his or her duty to protect the child; (2) the accused must be aware that the child is in circumstances that could threaten the child's physical or

psychological welfare; and (3) the accused either must have failed to act, or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare." ***Commonwealth v. Sebolka***, 205 A.3d 329, 337 (Pa.Super. 2019) (citation omitted).

Both parties agree that ***Vela-Garrett*** is the controlling case when a defendant is charged with EWOC in conjunction with DUI. There, Vela-Garrett was pulled over because he did not have the required inspection sticker on his windshield of his vehicle. 251 A.3d at 813. As soon as the officer went over to the driver's door, he immediately detected a strong odor of marijuana coming out of the driver's window. ***Id.*** Vela-Garrett's girlfriend and three-month-old baby were also in the vehicle. ***Id.*** The officer observed a digital scale and an empty "twisted corner of a baggie" in the vehicle. ***Id.*** at 814. A bag of marijuana was found in Vela-Garrett's girlfriend's pants, which he admitted was his. ***Id.*** He also admitted to smoking marijuana that morning. ***Id.*** Vela-Garrett was taken into custody and transported to the hospital for a blood draw. ***Id.*** His blood test showed that he had 40 nanograms per milliliter of THC Delta 9 Carboxy metabolite, which is the inactive metabolite of marijuana. ***Id.***

A jury convicted Vela-Garrett of, *inter alia*, DUI-metabolite and EWOC. ***Id.*** On appeal, he challenged the sufficiency of the evidence to sustain his EWOC conviction. ***Id.*** at 815. Vela-Garrett argued that the Commonwealth failed to present sufficient evidence that he "knowingly" placed his child in a situation that could threaten the child's physical or psychological welfare. ***Id.***

at 815-16. He pointed out that he was pulled over for an inspection sticker violation and there was no evidence that he was speeding, driving erratically, or taking any other action to indicate he was under the influence of drugs. *Id.* at 816.

In reversing his EWOC conviction, we found that the fact of impairment alone did not establish that Vela-Garrett knowingly placed his child in danger by driving with the child in the car. *Id.* Quoting *Commonwealth v. Mastromatteo*, 719 A.2d 1081, 1083 (Pa.Super. 1998), we emphasized that "driving under the influence of intoxicating substances does not create legal recklessness *per se*[,] but must be accompanied with other **tangible indicia of unsafe driving** to a degree that creates a substantial risk of injury which is consciously disregarded." *Id.* at 817 (emphasis in *Vela-Garrett*). We noted that the officer did not observe any unsafe driving by Vela-Garrett or any other conduct that would constitute "tangible indicia of unsafe driving." *Id.* at 818. Because we found that the evidence was insufficient to show that Vela-Garrett acted *recklessly*, we could not conclude that he acted *knowingly* since "EWOC's *mens rea* of 'knowingly' involves a higher level of culpability than REAP's *mens rea* of 'recklessly.'" *Id.* We therefore reversed Vela-Garrett's EWOC conviction. *Id.* at 819.

Significantly, *Vela-Garrett* involved a challenge to the sufficiency of the evidence after a conviction of EWOC. The instant case is still in the pre-trial stage where the Commonwealth only was required to make a *prima facie* showing — a much lower threshold than that required on a challenge to the

sufficiency of the evidence to sustain a conviction. ***See Munson***, 261 A.3d at 540.

Viewing the evidence in a light most favorable to the Commonwealth, and mindful that a *prima facie* case is a low threshold of proof, we find the evidence was sufficient to demonstrate a *prima facie* case of EWOC. While it is true that driving while intoxicated alone is insufficient to support an EWOC charge, there was additional evidence here sufficient to constitute *prima facie* evidence that Cordier acted knowingly. Cordier was driving with her children in the car with a high BAC - .219 – as well as a mixture of drugs in her system. Furthermore, the crash itself provides "other indicia of unsafe driving," and the evidence supports a reasonable inference that Cordier caused the crash. There was damage to the front right tire and bumper, and the driver's side airbag was deployed. The vehicle was inoperable and partially elevated in the air. Moreover, there were open bottles of alcohol in Cordier's vehicle at the time of the crash, she admitted to drinking alcohol before driving, and she showed clear signs of impairment during a field sobriety test. This evidence, and the reasonable inferences derived therefrom, viewed in their totality, establishes a *prima facie* that Cordier knowingly endangered the welfare of her children. Therefore, the Commonwealth is entitled to relief.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/30/2023</u>