J-S08018-23

2023 PA Super 161

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                                          :

                    v.                    :
                                          :

KEVIN SCOTT DELAMARTER       :
                                          :

        Appellant          :   No. 1045 MDA 2022

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000316-2021

BEFORE:   OLSON, J., McCAFFERY, J., and COLINS, J.[*]

DISSENTING OPINION BY McCAFFERY, J.:  **FILED: SEPTEMBER 6, 2023**

Because I would conclude the evidence presented by the Commonwealth was insufficient to sustain Appellant's conviction of endangering the welfare of a child (EWOC),[1] I must respectfully dissent.

In order to secure a conviction of EWOC, the Commonwealth must prove, *inter alia*, that "[a] parent . . . of a child . . . **knowingly endanger[ed]** the welfare of the child by violating a duty of care, protection or support."  18 Pa.C.S. § 4304(a)(1) (emphasis added).  A defendant acts "knowingly with respect to a material element of an offense" under the following circumstances:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304(a)(1).

> (i) if the element involves the nature of his conduct or the attendant circumstances, **he is aware that his conduct is of that nature or that such circumstances exist**; **and**

> (ii) if the element involves a result of his conduct, **he is aware that it is practically certain this his conduct will cause such a result**.

18 Pa.C.S. § 302(b)(2)(i)-(ii) (emphases added).

As the Majority concedes, this Court's recent decision in ***Commonwealth v. Vela-Garrett***, 251 A.3d 811 (Pa. Super. 2021), is instructive. ***See*** Majority's Op. at 11. In that case, a panel of this Court considered whether there was sufficient evidence to support the defendant's conviction of EWOC, when he was stopped and arrested for driving under the influence of a controlled substance with his child in the car. ***See Vela-Garrett***, 251 A.3d at 813.

The panel concluded the evidence was insufficient to sustain the EWOC conviction because "the Commonwealth failed to prove that [the defendant] **knowingly** endangered the welfare of his child." ***Vela-Garrett***, 251 A.3d at 819 (emphasis added). In doing so, the ***Vela-Garrett*** Court relied on two prior decisions of this Court — ***Commonwealth v. Hutchins***, 42 A.3d 302 (Pa. Super. 2012), and ***Commonwealth v. Mastromatteo***, 719 A.2d 1081 (Pa. Super. 1988) — which reversed convictions of recklessly endangering another person (REAP) based solely upon the fact that the defendant drove while under the influence of alcohol. The ***Vela-Garrett*** Court considered the similar facts in those cases — where the Commonwealth was only required to prove the defendants acted **recklessly** — and determined that the evidence

- 2 -

did not support a finding that the defendant acted with the higher *mens rea* of **knowingly** under the facts before it. ***See Vela-Garrett***, 251 A.3d at 818

The Majority acknowledges that under ***Vela-Garrett***, ***Mastromatteo***, and ***Hutchins***, "the commission of DUI with children in a vehicle — by itself — is inadequate to sustain convictions under either our EWOC or REAP statutes." Majority Op. at 15. However, the Majority asserts that a conviction of EWOC is not merely a "higher grade of REAP[,]" which requires a *mens rea* of knowingly instead of recklessly. ***See id.*** at 16. Rather, relying upon the Pennsylvania Supreme Court's plurality decision in ***Commonwealth v. Howard***, 257 A.3d 1217 (Pa. 2021), the Majority opines that in order to meet the *mens rea* element of EWOC, "the defendant must be aware that they have placed the child in a perilous or dangerous situation, but they do not have to be aware of the certainty of a particular result such as a car accident[.]" Majority Op. at 17. Thus, "the **result** of the actor's conduct is the creation of a dangerous **situation**, which is what Section 4304(a)(1) seeks to prevent." ***Id.***, *citing* ***Howard***, 257 A.3d at 1227.

With this background in mind, the Majority concludes there are three factors in the present case, aside from Appellant's act of driving under the influence, from which it could "reasonably infer the creation of a dangerous situation based on unsafe driving[:]" (1) the reasonable inference that Appellant "crossed over the opposite lane of traffic and collided with the opposing guide rail[;]" (2) Appellant's admission that he was "reading a text message at the time that he collided with the guide rail[;]" and (3) Appellant's

admission that he was driving 10 miles per hour above the posted speed limit of 35 miles per hour. Majority Op. at 18-19. The Majority opines that "[t]he combination of these circumstances demonstrated that Appellant violated a duty of care to his child and endangered the child by knowingly creating a dangerous situation" — in other words, "Appellant knowingly operated his vehicle in an unsafe manner, and it was **practically certain** that his conduct was causing a dangerous situation that threatened his child's physical or psychological welfare." *See id.* at 19-20 (emphasis added).

Turning back to the Supreme Court's plurality decision in *Howard*, I first note that six of the seven justices concluded the evidence in that case was **insufficient** to support the defendant's conviction of EWOC.[2] Mother and her three-year-old daughter (Child) were involved in a car accident while riding in a car-for-hire. *See Howard*, 257 A.3d at 1219. "There was no car seat in the vehicle, and none of the occupants were wearing seatbelts." *Id.* Despite the fact that none of those involved in the accident suffered serious injuries, Mother was charged with, and convicted of, both REAP and EWOC. *See id.* at 1219-20.

After a panel of this Court affirmed the judgment of sentence on appeal, the Supreme Court accepted allocator review to "consider whether evidence

---

[2] Justice Todd authored the opinion announcing the judgment of the court (OAJC), joined by Justice Donohue. Justices Saylor, Dougherty, and Wecht each filed concurring opinions. Chief Justice Baer joined Justice Dougherty's concurring opinion. Justice Mundy filed a dissenting opinion.

that a parent allowed her child to ride in a car-for-hire without being restrained by a child safety seat . . . is, without more, sufficient to support a conviction" for EWOC. **Howard**, 257 A.3d at 1219 (OJAC) (footnote omitted). In the OAJC, Justice Todd, joined by Justice Donohue, held Mother's actions were insufficient to support the conviction. She explained:

> [I]n order to satisfy the knowledge requirement of Section 4304(a)(1), the Commonwealth was required to prove both that Mother was aware that Child should have been restrained in a car seat when riding in the car-for-hire, **and that Mother was aware that, by allowing Child to ride in the car-for-hire unrestrained, she placed Child in a perilous or dangerous situation**. . . .

*Id.* at 1227 (emphasis added & footnote omitted).

In making this determination, Justice Todd noted that "courts must consider whether the conduct at issue offends the 'common sense of the community' and the 'sense of decency, propriety and morality which most people entertain.'" **Howard**, 257 A.3d at 1228 (OJAC) (citation omitted). She then concluded:

> [T]he Commonwealth failed to demonstrate that, when viewed through the "common sense of the community" and the "sense of decency, propriety, and the morality which most people entertain," Mother's conduct in allowing Child to ride in the car-for-hire without a car seat, absent any other indicia of dangerousness, endangered the welfare of Child. . . .

*Id.* Justice Todd observed that the Commonwealth failed to present "any evidence regarding the circumstances of Mother's decision to allow Child to ride in the car-for-hire without a car seat" or other transportation options in Mother's community. *Id.* Furthermore, she noted while the Vehicle Code

- 5 -

requires a person **transporting** a child under the age of four to secure the child in a "child passenger restraint system[,]" the failure to do so results in only a summary offense and a $75 fine. *Id.* at 1229. Thus, Justice Todd opined:

> Despite the fact that use of a car seat is recommended by numerous organizations, . . . the legislature has deemed a driver's failure to utilize seatbelts or car seats when transporting a child to be a summary offense and nothing more, and it has not otherwise expressly criminalized a parent or guardian's failure to utilize the appropriate child restraints when he or she is not the driver of the vehicle. We cannot conclude that the community views Mother's conduct in allowing Child to ride in the car-for-hire without a car seat in a harsher light than does the General Assembly, subjecting her to a first-degree misdemeanor conviction for child endangerment. . . .

*Id.* at 1230 (footnote omitted).

Justice Saylor filed a concurring opinion, reasoning that Mother's conduct was not "expressly criminalized" and there was a "lack of clear laws . . . pertaining to a parent's duty regarding the use of a car seat in ride-sharing services." *Howard*, 257 A.3d at 1231 (Saylor, J., concurring) (citation & quotation marks omitted). He stated, however, that he would not utilize the "community-standards approach relied on in the lead opinion." *Id.*

Justice Dougherty, joined by Chief Justice Baer, opined that he agreed "substantially with Judge Saylor's concurring opinion," and would conclude the evidence against Mother was insufficient based solely on a "straightforward analysis of the relevant statutory texts, the evidence of record, and the trial court's findings and conclusions — without recourse to the community-

standards approach relied on by the [OAJC.]" ***Howard***, 257 A.3d at 1231 (Dougherty, J., concurring) (citation & quotation marks omitted). He concluded that Mother did not violate a duty of care to Child because only the **operator** of a car is required to fasten a child under the age of four in a restraint system. ***See id.*** at 1232. Moreover, Justice Dougherty observed that "the requirements of the [Vehicle Code's] occupant protection provisions or evidence of their violation is '**not admissible as evidence in a criminal proceeding**' as a matter of law. 75 Pa.C.S. § 4581(f)." ***Id.*** Lastly, he noted that while the "common sense of the community may at times appropriately provide context to application of the EWOC statute," it was not relevant in that case because "there is no definitive communal common sense, and more importantly, no evidence in [the] record, regarding the appropriate discharge of a parental protective duty where there is no car seat available[.]" ***Id.*** at 1232-33 (quotation marks omitted).

In a concurring opinion, Justice Wecht advocated for the abandonment of the "common sense of the community" standard. ***See Howard***, 257 A.3d at 1233 (Wecht, J., concurring). He opined: "It is not for Pennsylvania's judiciary to deem conduct worthy of criminalization based upon judges' hunches as to whether an act 'injuriously affect[ed] public morality, or obstruct[ed], or pervert[ed] public justice, or the administration of government.'" ***Id.*** at 1236 (citation omitted). Rather, he concluded that Mother did not violate any duty of care because, as a **passenger** in the vehicle, she was not required to ensure that her child was restrained in a car

seat. ***Id.*** at 1237. Moreover, Justice Wecht opined that even if Mother was operating the vehicle, she would not be guilty of EWOC based solely on her failure to place Child in a car seat. ***Id.*** at 1238. In order to secure a conviction, the Commonwealth must demonstrate Mother's actions placed Child in a dangerous situation that created a "real and probable" threat of harm — "[o]ne does not expect that most, or even a significant number of, car rides will result in a dangerous collision." ***Id.***

Lastly, in a dissenting opinion, Justice Mundy opined that "Mother's failure to secure her three-year-old toddler in a car seat or at least fasten the seatbelt restraint or at a very minimum sit with her toddler in the backseat, [was] sufficient to meet [the common sense of the community] standard." ***Howard***, 257 A.3d at 1239-40 (Mundy, J., dissenting). She emphasized that the EWOC statute is "protective in nature, and must be construed to effectuate its broad purpose of sheltering children from harm." ***Id.*** at 1240 (citation & quotation marks omitted). Thus, despite the fact that Mother could not be convicted under the safety restraint statute (Section 4508), "it does not change the endangerment faced by a three-year-old toddler when placed alone in a back seat without the protection of at least a seat belt or an adult to hold and supervise the child in the moving vehicle." ***Id.*** Accordingly, Justice Mundy would have affirmed the judgment of sentence.

I glean the following from the plurality decision in ***Howard***. A majority of the Justices agree that the "common sense of the community standard" is still somewhat relevant in determining whether a parent's conduct was

sufficient to support a conviction of EWOC. **See Howard**, 257 A.3d at 1228 (OJAC) (courts must consider whether parent's conduct offends common sense of community), 1232-33 (Dougherty, J., concurring) (consideration of common sense of community may provide appropriate context in some cases); 1239-40 (Mundy, J., dissenting) (Mother's failure to secure child in car seat did not meet common sense of community standard). However, in order to secure a conviction, the Commonwealth must prove the parent knowingly took actions that they knew would place their child in a dangerous situation.

Here, as noted **supra**, the Majority concluded that three factors supported its determination that "Appellant violated a duty of care to his child and endangered the child by knowingly creating a dangerous situation" — Appellant crossed over the opposite lane of traffic and struck a guide rail, he texted while driving, and he drove 10 miles over the speed limit. **See** Majority Op. at 18-19. It merits emphasis, however, that both the Commonwealth and the trial court relied heavily upon another purported factor as the primary support for their conclusion that Appellant knowingly put his child at risk – that is, Appellant did not restrain his child in a car seat while driving. **See** Trial Ct. Op. at 5-6 (stating it was "not contradicted" that "Appellant did not have his child in a child safety seat" and "[t]he jury did not find credible [Appellant's] assertion that [his child] must have unbuckled her child safety seat in between the vehicle going into the guardrail and found Trooper Yetter arriving on scene"); **see also** Commonwealth's Brief at 9 (arguing Appellant's actions "in knowingly placing his daughter in a motor vehicle and then

operating a vehicle under the influence, where his three . . . year [old] child was unrestrained, and then crashing the vehicle while attempting to read a text message," was sufficient to support EWOC verdict). However, the Majority concedes that evidence presented by the Commonwealth was **insufficient** to "distinguish whether Appellant's child was restrained in a child car seat **at the time of** the guide rail collision." *See* Majority's Op. at 25 n.13 (emphasis added). Although the responding trooper observed the child unrestrained in the vehicle at some point **after the accident**, there was no evidence or testimony presented that the child was unrestrained **while Appellant was driving**. Thus, the factor that both the trial court and Commonwealth found dispositive of Appellant's guilt is simply not supported by the evidence. The Majority's fleeting reference to this unsupported factor is telling.

Nevertheless, I conclude that the first factor cited by the Majority — Appellant's crossing over the lane of traffic and hitting a guide rail — does not support the Majority's argument. In fact, even the Majority acknowledges that "there is no reason to infer that [Appellant] **purposely** attempted to drive though an oncoming lane of traffic to hit a guide rail[.]" Majority Op. at 19 (emphasis added). Rather, that was the **result** of Appellant's purposeful actions — *i.e.*, reading a text message and traveling above the speed limit. Accordingly, the fact that Appellant may have crossed the lane of traffic and struck the opposite guide rail — contrary to his statement to the trooper —

does not demonstrate he **knowingly** drove erratically or **knowingly** endangered his child.

Thus, viewing the evidence in the light most favorable to the Commonwealth, the only facts supporting Appellant's conviction are his own admissions that: (1) he "looked over to read a text message" immediately before the accident, and (2) he was traveling an estimated "45 miles per hour" in a 35-mile-per-hour zone. **See** N.T., 5/16/22, at 32, 77. While Appellant clearly demonstrated poor judgment, I cannot conclude that such actions — each of which amount to a summary offense under the Motor Vehicle Code[3] — establish that he "**knowingly** operated his vehicle in an unsafe manner, and it was **practically certain** that his conduct was causing a dangerous situation that **threatened his child's physical or psychological welfare**." **See** Majority Op. at 20 (emphases added). Moreover, I would not conclude that Appellant's actions in briefly looking at a text message while traveling 10 miles over the speed limit offends the "common sense of the community." **See** **Howard**, 257 A.3d at 1228. Indeed, there was no testimony at all regarding Appellant's driving prior to, or at the time of, the accident. Thus, the record, as it stands, reflects only that Appellant was momentarily distracted. His actions herein created no more a risk to his child's welfare than Mother's

---

[3] **See** 75 Pa.C.S. §§ 3316(d) (conviction of texting while driving is a summary offense subject to $50 fine), 3362(c)(1)(ii), (2) (violation of maximum speed limit is summary offense subject to $35 fine, plus additional $2 per mile for each mile in excess of five miles per hour over maximum).

decision to place her three-year-old child, unrestrained, in the back seat of a car-for-hire in ***Howard***.

Thus, I respectfully dissent.[4]

---

[4] Because I conclude the evidence is insufficient to support Appellant's EWOC conviction, I would not address his weight of the evidence claim, although I agree with the Majority's determination that the claim is waived. ***See*** Majority Op. at 7. Moreover, it merits emphasis that Appellant challenged only his EWOC conviction on appeal; he did not challenge his DUI conviction.