J-S08018-23

2023 PA Super 161

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEVIN SCOTT DELAMARTER :
:
Appellant : No. 1045 MDA 2022

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000316-2021

BEFORE: OLSON, J., McCAFFERY, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED: SEPTEMBER 6, 2023**

Appellant, Kevin Scott Delamarter, appeals from the judgments of sentence entered in the Mifflin County Court of Common Pleas following his jury conviction of endangering the welfare of a child (EWOC),[1] and his non-jury convictions of driving under the influence of a controlled substance (DUI)[2] and two summary offenses.[3] On appeal, Appellant challenges the weight and sufficiency of the evidence supporting his EWOC conviction.[4] Upon careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304(a)(1).

[2] 75 Pa.C.S. § 3802(d)(2).

[3] 75 Pa.C.S. § 3316(a) (prohibiting text-based communications) and 75 Pa.C.S. § 3309(1) (disregarding a single traffic lane).

[4] Appellant does not raise any claims concerning his other convictions.

The facts underlying this appeal, as presented during Appellant's jury trial, are as follows. On February 15, 2021, Pennsylvania State Trooper Zachary Yetter was on regular patrol in a marked vehicle in Granville Township, Mifflin County, Pennsylvania. *See* N.T. 5/16/22, 23-24. The day was clear, and the roads were dry. *Id.* at 26. At approximately 2:30 p.m., Trooper Yetter was traveling northbound on State Route 103 when he "came up behind a line of traffic that was stopped in the middle of the road[.]" *Id.* Because of a turn in the road, the trooper could not see why traffic was stopped; however, an individual told him that "there [wa]s a crash up ahead." *Id.*

Trooper Yetter activated his overhead lights and approached the single-vehicle-involved crash scene. N.T. 5/16/22, 27-29. He saw the driver, later identified as Appellant, "opening the door … and stepping out of the driver's" side of the car. *Id.* at 28. The car was stopped "in the northbound lane of State Route 103" but was "still in drive."[5] *See id.* at 28-29, 31. Trooper Yetter also observed a "young girl" – later identified as Appellant's three-year-old daughter – standing in the backseat with her feet on the floor and her hands on each of the front seats. *Id.* at 29-30. Neither Appellant nor his daughter appeared to have any injuries. *See id.* at 31. The Commonwealth

_____

[5] Someone eventually put the car "in park" but Trooper Yetter could not recall who did so. N.T. 5/16/22, 31-32, 55. Regardless, the trooper testified that Appellant's car was "[d]isabled" and not capable of being driven from the scene. *See id.* at 54.

presented no eyewitnesses to the accident, and no testimony regarding how long before the trooper arrived the accident had occurred.

When Trooper Yetter asked what had happened, Appellant responded that he was traveling northbound toward Lewistown when he "looked over to read a text message." N.T. 5/16/22, 32. At the same time, he "bumped off the **northbound** guide rail[,]" which the trooper noted was on the "passenger side of his car." *Id.* at 32-33, 42 (emphasis added). Appellant further stated that he then "came to a complete stop." *Id.* at 33.

During this interaction, Trooper Yetter observed that Appellant "was very slow with his movements, very sluggish[,] had a thick, slurred speech[, a] low mumbling voice[, and] his pupils were constricted[.]" N.T. 5/16/22, 33. The trooper did not smell an odor of alcohol, but asked Appellant if he had consumed any controlled substances. *Id.* at 35. Appellant responded that "he was consuming Suboxone[,]" which the trooper was aware is "taken for narcotic addiction." *Id.* at 35-36. There was no testimony, however, concerning the effect, if any, the consumption of Suboxone has on a person's body. Indeed, the trial court ruled that Trooper Yetter did not have sufficient training to "say unequivocally the Suboxone caused the wreck[,]" but the trooper was permitted to testify that "based on [his] experience" that he believed Appellant was impaired by "some type of substance." *Id.* at 41, 51-52.

Trooper Yetter testified that his observations at the scene suggested Appellant's version of the guide rail collision was not truthful. ***See*** N.T. 5/16/22, 42-44. Specifically, he noticed there was "disabling damage to the driver's side of the vehicle[, but] no damage to the [passenger] side of the vehicle." ***Id.*** at 43. The trooper also observed tire marks in the ***southbound lane***, "leading up to the guide rail, marks on the guide rail, and then you could see tire marks coming right to where [the car's] final rest[ing spot] was." ***Id.*** at 43-44. Trooper Yetter did not have dash cam video of the accident scene, nor did he photograph any damage to Appellant's car or the tire marks he observed on the road and guide rail. ***See id.*** at 55-56. Trooper Yetter included the following diagram of the scene in his crash report:



Commonwealth Exhibit 2 (police crash report); N.T. 5/16/22, 83-85, 101. Trooper Yetter documented in his crash report that Appellant admitted that he was driving forty-five miles per hour, ten miles per hour over the posted speed limit along State Route 103. *Id.* at 77.

Trooper Yetter placed Appellant under arrest for suspicion of DUI and transported him to a hospital to conduct a blood draw. *See* N.T. 5/16/22, 45-48. However, Appellant refused to submit to a blood test. *See id.* at 46-48, 101; Commonwealth Exhibit 1 (implied consent form). He was later charged with DUI, EWOC, and summary offenses for disregarding a single traffic lane and engaging in text-based communications while driving.

On May 16, 2022, Appellant proceeded to a jury trial on the EWOC charge only.[6] After the Commonwealth presented its case-in-chief, Appellant moved for a judgment of acquittal on the EWOC charge, which, following argument, the trial court denied. *See* N.T. 5/16/22, 102, 116-17. Appellant presented no evidence or testimony. *Id.* at 141-42. That same day, the jury returned a verdict of guilty on the charge of EWOC. *Id.* at 179-80; Verdict Slip, 5/16/22, 1. The trial court subsequently found Appellant guilty of the remaining offenses. N.T. 5/16/22, 181; Verdict and Order, 5/16/22, 1.

_____

[6] Because a first conviction of DUI carries a maximum term of only six months' incarceration, it is considered a "petty" offense and does not entitle a defendant to a jury trial. *See Commonwealth v. Kerry*, 906 A.2d 1237, 1239-40 (Pa. Super. 2006).

Appellant proceeded to sentencing on June 30, 2022, at which time, the court imposed twenty-four to forty-eight months' imprisonment for EWOC and a concurrent term of seventy-two hours to six months' imprisonment for DUI.[7] Sentencing Order, 6/30/22, 1-2. Appellant did not file a post-sentence motion. This timely appeal followed.[8] Notice of Appeal, 7/26/22, 1.

Appellant purports to raise the following three issues for our review:

I. Whether the trial court erred in denying Appellant's mot[i]on for judgment of acquittal on the [EWOC] count when the Commonwealth failed to prove that the Appellant drove his vehicle in a manner that created a substantial risk of injury which Appellant consciously disregarded[?]

II. Whether the weight of the evidence supported the guilty verdict on the [EWOC] count when the Commonwealth failed to present evidence that Appellant knew the child was placed in circumstances that could affect the child's welfare[?]

III. Whether the evidence was sufficient to sustain the conviction for [EWOC] when the Commonwealth failed to prove that Appellant acted knowingly[; i]n other words, [did] the Commonwealth present[ ] sufficient evidence that the Appellant knew the child was placed in circumstances that could threaten the child's welfare[?]

Appellant's Brief at 5 (suggested answers and some capitalization omitted).

_____

[7] The court imposed a fine of $25 for each of the summary offenses. Sentencing Order, 6/30/22, 1-2.

[8] Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). **See** Rule 1925 Order, 7/28/22, 1; Rule 1925(b) Statement, 8/18/22, 1.

Preliminary, we note that Appellant's second claim is waived for our review. A challenge to the weight of the evidence must be raised before the trial court either orally or in a written motion before sentencing, or in a post-sentence motion. **See** Pa.R.Crim.P. 607(A)(1)-(3). Here, Appellant did not file any written motions challenging the weight of the evidence, and the transcript from the sentencing hearing is not included in the certified record.[9] **See** Pa.R.A.P. 1911 ("The appellant shall request any transcript required[.]"). Moreover, we note that Appellant does not present any argument concerning the weight of the evidence in his brief. Thus, we conclude this claim is waived. **See Commonwealth v. Bryant**, 57 A.3d 191, 196-97 (Pa. Super. 2012) ("Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentence or in a post-sentence motion will result in waiver of the claim.").

Appellant's argument focuses only on his challenge to the sufficiency of the evidence supporting his EWOC conviction.[10] Our review of a sufficiency claim is well settled:

---

[9] We note, too, that Appellant does **not** assert that he preserved this claim at the sentencing hearing.

[10] Appellant purports to present two issues challenging the sufficiency of the evidence – the first, asserting the trial court erred when it denied his motion for judgment of acquittal. **See** Appellant's Brief at 5.

> A motion for judgment of acquittal challenges the sufficiency of
> the evidence to sustain a conviction on a particular charge, and is

*(Footnote Continued Next Page)*

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. …
>
> Importantly, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citations & quotation marks omitted).

Section 4304 of the Crimes Code provides, in relevant part: "A parent … supervising the welfare of a child under 18 years of age, … commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). This Court has

_____

> granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa. Super. 2014) (citation omitted). Appellant does not differentiate between his first and third issues in his brief. Because we review both claims under the same standard, we will address Appellant's claims as a singular challenge to the sufficiency of the evidence. *See Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa. Super. 2006) (applying sufficiency of evidence standard to claim challenging denial of motion for judgment of acquittal).

developed a three-part test for an EWOC conviction. The Commonwealth must prove:

> [(]1) [T]he accused [was] aware of his/her duty to protect the child;
>
> [(]2) [T]he accused [was] aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and
>
> [(]3) [T]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Bryant*, 57 A.3d at 197 (citations omitted). We further note:

> Endangering the welfare of a child is a specific intent offense enacted in broad terms so as to safeguard the welfare and security of children. To be convicted under this statute, the Commonwealth must prove a **knowing violation of a duty of care**.

*Commonwealth v. Foster*, 764 A.2d 1076, 1082 (Pa. Super. 2000) (citations omitted and emphasis added).

A knowing *mens rea* is defined in the Crimes Code as follows:

> **(b) Kinds of culpability defined.--**
>
> …
>
> (2) A person acts knowingly with respect to a material element of an offense when:
>
>> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2)(i)-(ii).

Appellant insists the Commonwealth failed to prove that he **knowingly** violated a duty of care to his child because the fact that he drove under the influence of a controlled substance is, alone, insufficient to demonstrate his specific intent. Appellant's Brief at 10. Appellant relies on two decisions – **Commonwealth v. Hutchins**, 42 A.3d 302 (Pa. Super. 2012), and **Commonwealth v. Mastromatteo**, 719 A.2d 1081 (Pa. Super. 1988) – where this Court reversed convictions of recklessly endangering another person (REAP), which requires a lesser degree of culpability, based solely on the fact that the defendant drove under the influence of a controlled substance.[11] **See** Appellant's Brief at 10-12. He insists that more is required, and alleges, in the present case, "there was no evidence of a tangible indicia of unsafe driving that created a substantial risk of injury that Appellant consciously disregarded." **Id.** at 14. Appellant maintains that there was "[n]o evidence [] presented as to erratic driving, driving in the opposite lane, weaving, or any other description of driving." **Id.** He also asserts that the fact he admitted that he drove ten miles per hour over the posted speed limit, and "merely looked at a text on his cell phone," does not establish

---

[11] **See** 18 Pa.C.S. § 2705 ("A person commits [REAP] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.").

- 10 -

"recklessness or a violation of a known duty to his daughter." ***Id.*** at 14-15. Accordingly, he contends we must reverse his conviction.

A review of our recent decision in ***Commonwealth v. Vela-Garrett***, 251 A.3d 811 (Pa. Super. 2021), appears to be a logical starting point for our analysis as that case involved the review of a sufficiency claim concerning an EWOC conviction which in turn relied on the sufficiency reviews of the REAP convictions in ***Mastromatteo*** and ***Hutchins***. In ***Vela-Garrett***, this Court found that evidence was insufficient for EWOC where the defendant had been driving with a three-year-old child in his car, a state trooper testified, based on conducted field sobriety tests, that the defendant was impaired to a degree to which he was not able to safely drive, and a blood test of the defendant revealed forty nanograms per milliliter of an inactive metabolite of marijuana. 251 A.3d at 814, 816, 818-19.

The ***Vela-Garrett*** panel held that because it could not conclude that the defendant had even recklessly endangered his child, pursuant to the prior REAP decisions in ***Mastromatteo*** and ***Hutchins***, then it could not conclude that the defendant knowingly endangered his child for purposes of his EWOC conviction, because EWOC required a higher level of culpability than REAP (knowingly acting rather than recklessly acting). ***Vela-Garrett***, 251 A.3d at 818-19. Quoting ***Mastromatteo***, this Court emphasized that "driving under the influence of intoxicating substances does not create legal recklessness *per se*[,] but must be accompanied with other ***tangible indicia of unsafe driving*** to a degree that creates a substantial risk of injury which is

consciously disregarded." ***Vela-Garrett***, 251 A.3d at 817 (emphasis added), ***citing Mastromatteo***, 719 A.2d at 1083. The panel noted that the arresting officer did not observe any unsafe driving by Vela-Garrett or any other conduct that would constitute "tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which [was] consciously disregarded." ***Vela-Garrett***, 251 A.2d at 818. The defendant in that case also pointed out that he was pulled over for an inspection sticker violation and there was no evidence that he was speeding, driving erratically, or taking any other action to indicate that he was under the influence of drugs or alcohol. ***Id.*** at 816.

In ***Mastromatteo***, a police officer observed the defendant driving very slowly and drifting over the middle line of a road three times before executing a traffic stop. 719 A.2d at 1082. The defendant's young son was in the car, and the defendant "exhibited signs of being intoxicated[.]" ***Id.*** Subsequent chemical testing of the defendant revealed "a .168 blood alcohol level and 570 nanograms per decil[i]ter for marijuana." ***Id.*** On appeal, this Court reversed the conviction for REAP, opining:

> Our [review] leads us to conclude that driving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with **other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded**. Whether, in this context, the unsafe driving results from diminished judgment, a more cavalier approach to driving or sheer physical incapacitation would seem immaterial, as is the degree to which any of these factors is actually related to the consumption of alcohol or drugs. **What is material is actual reckless driving or conduct, for any reason, for it is this conduct which creates the peril in**

- 12 -

> *question*.  Since people vary in their response to alcohol we believe this is a sound principle.[4]
>
> > [4] Some people may respond to alcohol by driving in a brazen and inherently reckless manner as evidenced by speeding and reckless weaving through traffic … Other individuals may not exhibit any distinguishable difference in their driving even though they may be legally intoxicated. Indeed, some more prescient individuals, aware that they have ingested some alcohol, may even compensate for their consumption by being very cautious in their driving.  In short, there is no hard and fast formula for determining the probable effects of alcohol on any given driver or the increased risk of danger that alcohol consumption creates so as to safely conclude that a driver's alcohol consumption will increase the risk of injury sufficiently to establish legal recklessness.  Indeed, undoubtedly there are certain drivers who will exhibit safer driving conduct while legally intoxicated than certain drivers do when they are sober.

*Id.* at 1083 & n.4 (emphasis added).

In *Hutchins*, the defendant was driving his vehicle with his three young daughters as passengers.  42 A.3d at 304.  He made a left turn in front of another vehicle which resulted in a crash.  *Id.*  "The force of impact was enough to deploy the airbags in [the defendant's] vehicle, and [the other] car was totaled."  *Id.* (citation omitted).  All three of the defendant's daughters, and the other driver, were injured in the accident.  *Id.* at 312.  When the investigating trooper arrived, the defendant "admitted that the accident was his fault because he was 'distracted' and thought that he could make the turn." *Id.* at 304 (citation omitted).  The trooper described the defendant's demeanor as "unusually calm" and "flat line[;]" upon questioning the defendant admitted he had smoked marijuana earlier that day.  *Id.* (citation

omitted). Subsequent testing revealed "43ng/ml of carboxy acid [a metabolite of the marijuana plant]" in the defendant's blood. ***Id.*** at 305 (citation omitted). Hutchins was later convicted of DUI and four counts of REAP.

As in ***Mastromatteo***, on appeal, this Court reversed Hutchins' convictions for REAP. First, the panel noted that driving while under the influence of a controlled substance alone does not establish recklessness *per se*. ***Hutchins***, 42 A.3d at 311, ***citing Mastromatteo***, 719 A.2d at 1082. Rather, additional evidence of unsafe driving is required. In concluding the facts before it were insufficient to establish the degree of recklessness required for a conviction for REAP, the ***Hutchins*** panel opined:

> [The defendant's] acts in this matter are deplorable; he got high on an illegal substance and then drove his three young daughters in his vehicle, resulting in an accident injuring all three of his daughters and another innocent driver. Nevertheless, we are constrained to agree that, ***absent additional evidence of his reckless driving or conduct, the evidence was insufficient to establish that [the defendant] recklessly endangered the lives of others.*** Based upon our holding in ***Mastromatteo*** and its progeny, the Commonwealth was required to present evidence of recklessness ***in addition to*** [the defendant's] intoxication. The only other relevant evidence presented in this matter is that an accident occurred. ***However, that [the defendant] exercised poor judgment in negotiating a left turn does not equate to recklessness.*** Unlike the defendant's conduct in [other cases where a conviction of REAP was upheld, the defendant] was not observed acting recklessly, for example dangerously weaving through traffic in an aggressive manner, or driving the wrong way on an off ramp. Consequently, we are constrained to vacate [the] judgment of sentence with respect to [the] REAP convictions.

***Hutchins***, 42 A.3d at 312 (some emphasis added).

Relying on ***Mastromatteo*** and ***Hutchins***, the ***Vela-Garrett*** Court opined:

> [I]t is clear we must reverse [the defendant's] EWOC conviction. As in this case, there was evidence establishing that Mastromatteo and Hutchins were impaired when they drove their vehicles. While both Mastromatteo and Hutchins exhibited ***some*** form of unsafe driving – with Mastromatteo's swerving over the middle line three times, and Hutchins' causing a serious accident with another vehicle – our Court held that additional evidence of reckless driving or conduct was necessary for the Commonwealth to establish that Mastromatteo or Hutchins had recklessly endangered the lives of the young children in their vehicles. Here, [the corporal] did not observe ***any*** unsafe driving by [the defendant], or any other conduct that would constitute a "tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which [was] consciously disregarded." Accordingly, the evidence was insufficient to demonstrate that [the defendant] acted ***recklessly***.
>
> Because we cannot conclude that [the defendant] even recklessly endangered his child, we certainly cannot conclude that he ***knowingly*** did so, as his conviction for EWOC requires … It is clear that EWOC's *mens rea* of "knowingly" involves a higher level of culpability than REAP's *mens rea* of "recklessly."

***Vela-Garrett***, 251 A.3d at 818 (citation omitted; emphasis in original).

For purposes of this appeal, we can extrapolate from ***Vela-Garrett***, ***Mastromatteo***, and ***Hutchins*** that the commission of DUI with children in a vehicle – by itself – is inadequate to sustain convictions under either our EWOC or REAP statutes. Our reliance on ***Mastromatteo*** and ***Hutchins*** upon reaching the result in ***Vela-Garrett***, however, appears to suggest that EWOC and REAP each focus on the same type of conduct and differ only as to the

degree of mental state needed for a conviction so a DUI which is inadequate to support recklessness for REAP, must also fail to support knowing conduct for purposes of EWOC. Appellant makes this the central point of his argument, comparing himself to the defendant in **Hutchins**, but this line of reasoning does not prove the insufficiency of the evidence for EWOC. Appellant's Brief at 15.

While we agree with the general proposition that a lesser *mens rea* (reckless conduct needed for REAP) is subsumed in a greater *mens rea* (knowing conduct for EWOC), and a person could never be convicted of EWOC based on reckless conduct alone, we must also appreciate that the EWOC and REAP statutes are not aligned from an elements standpoint. As we have explained:

> A conviction for reckless endangerment requires proof of conduct that places or may place another person in danger of death or serious bodily injury, while a conviction for endangering the welfare of children only requires proof of circumstances that could threaten the child's physical or psychological welfare. Thus, reckless endangerment requires proof of a fact that endangering the welfare of children does not. In other words, the element of conduct which places or may place a person in danger of death or serious bodily injury is not subsumed within proof that a child is placed in circumstances that could threaten the child.

**Commonwealth v. Martir**, 712 A.2d 327, 329-30 (Pa. Super. 1998). By focusing only on the apparent risk of injury in his claim – as would be the focus of a sufficiency claim involving a REAP conviction – Appellant incorrectly treats EWOC as a higher grade of REAP in DUI cases and, in the process, fails

- 16 -

to properly analyze his sufficiency claim. *See* Appellant's Brief at 14 ("In the case at bar, there was no evidence of a tangible indicia of unsafe driving that created a substantial risk of injury that Appellant consciously disregarded.").

Instead, our analysis in the instant case should be guided by our Supreme Court's sufficiency review in ***Commonwealth v. Howard***, 257 A.3d 1217 (Pa. 2021) (holding that evidence was insufficient for EWOC where Howard placed her child in a ride-for-hire car that did not contain a child car seat). In ***Howard***, the Supreme Court clarified that, in order to satisfy the knowing requirement of 18 Pa.C.S. § 4304(a)(1), the Commonwealth must prove that that a defendant was aware of both their duty of care to their child when transporting the child and that their conduct endangered the welfare of their child. ***Howard***, 257 A.3d at 1225. With respect to the latter component of the *mens rea* element, the defendant must be aware that they have placed the child in a perilous or dangerous situation, but they do not have to be aware of the certainty of a particular result such as a car accident:

> [A] person violates Section 4304(a)(1) if he "knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). "Endanger" is defined, *inter alia*, as "to bring into danger or peril," or "to create a dangerous situation." https://www.merriam-webster.com/dictionary/endanger. Thus, the material element of Section 4304(a)(1) is the creation of a perilous or dangerous situation… We emphasize that, for purposes of Section 4304, the requirement of Section 302(b)(2)(i) that the accused be "aware that it is practically certain that his conduct will cause such a result" does not require that he be certain of a particular harm or injury – for example, in this case, a car accident. Again, as it pertains to Section 4304, the *result* of the actor's conduct is the creation of a dangerous *situation*, which is what Section 4304(a)(1) seeks to prevent.

*Id.* (emphasis in original). Moreover, "in determining what conduct violates the [EWOC] statute, '[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.'" *Id.* at 1222 n.9, *quoting Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015).

Here, the evidence presents us with three factors, in addition to an instance of DUI with a child in the car, from which we can reasonably infer the creation of a dangerous situation based on unsafe driving. First, the disabling damage to the driver's side of Appellant's car, along with the tire marks in the oncoming southbound lane and marks on the guide rail on the southbound side of the road, supported the reasonable inference that Appellant had crossed over the opposite lane of traffic and collided with the opposing guide rail as demonstrated in the trooper's diagram included in the record. N.T. 5/16/22, 42-44; Commonwealth Exhibit 2. While there was no witness testimony presented as to the circumstances of the crash, Appellant admitted to bumping off a guide rail, though the trooper's recollection of the scene and the damage to the car suggested that Appellant was incorrect as to which side of the road he had struck the rail. N.T. 5/16/22, 32-33, 42-44. Second, Appellant admitted to reading a text message at the time that he collided with the guide rail. *Id.* at 32 (Trooper Yetter: "He told me I looked over to read a text message. When I did so, I bumped off the northbound guide rail."), 42

("He said he was reading a text message and bumped off of the northbound…"). Third, he admitted to driving ten miles per hour over the posted speed limit at that time. *Id.* at 77 (Trooper Yetter: "Whatever I put in my report is what he would have told me that day … I have in my report that he was I believe going 45 miles per hour.").

The combination of these circumstances demonstrated that Appellant violated a duty of care to his child and endangered the child by knowingly creating a dangerous situation. While there is no reason to infer that he had purposely attempted to drive through an oncoming lane of traffic to hit a guide rail, his efforts to simultaneously speed and check a text message on his phone while driving under the influence of a controlled substance led to him lose control of his car in a manner which easily could have resulted in injury and psychological trauma to his child. Speeding is one of many factors we have considered supporting REAP and reckless driving in DUI cases. ***See Commonwealth v. Schmohl***, 975 A.2d 1144, 1148-49 (Pa. Super. 2009) (holding that evidence was sufficient for REAP where, *inter alia*, Schmohl "sped while DUI"); ***Commonwealth v. Jeter***, 937 A.2d 466, 468 (Pa. Super. 2007) (speeding treated, among other factors, as tangible indicia of unsafe driving: "Jeter was driving his vehicle on the Pennsylvania Turnpike, so presumably he was traveling at an increased speed, which could have resulted in substantial harm to others if an accident had occurred"). Moreover, while we do not appear to have addressed examples of texting while driving in our sufficiency caselaw addressing EWOC and REAP convictions in DUI cases, inattentive

- 19 -

driving has become a prominent source of motor vehicle-related deaths in this country. *See* U.S. Dep't Transp., NHTSA, Overview of Motor Vehicle Traffic Crashes in 2021, 23, available at https://crashstats.nhtsa.dot.gov/Api/Public/ ViewPublication/813435 (3,522 estimated fatalities nationally in 2021 distraction-affected crashes, *i.e.*, a crash involving at least one driver who was distracted, which constituted 8.2 percent of total traffic fatalities in 2021, and a 12-percent increase from the prior year).

The *mens rea* element for EWOC is supported by the evidence because it showed that Appellant knowingly operated his vehicle in an unsafe manner, and it was practically certain that his conduct was causing a dangerous situation that threatened his child's physical or psychological welfare. The absence of the infliction of a physical injury to the child arising from a car accident or the uncertainty as to that potential outcome at the time of Appellant's unsafe driving under the influence of a controlled substance is immaterial for purposes of our review.[12] ***See Commonwealth v. Krock***, 282 A.3d 1132, 1139 (Pa. Super. 2022) ("The [EWOC] statute does not require the actual infliction of physical injury. Nor does it state a requirement that

---

[12] It is important to note that if we were to base our sufficiency caselaw for EWOC convictions only on sufficiency analysis in REAP cases, which by the terms of 18 Pa.C.S. § 2705, are singularly focused on the danger of death or serious bodily injury, we would ignore the EWOC statute's stated concern for the psychological welfare of children. In DUI cases, if we focus only on the likelihood of a car accident when conducting sufficiency review for EWOC offenses, we will fail to appreciate that the experience of being driven by an impaired and distracted parent or guardian may be psychologically damaging for a child even if an accident does not take place.

the child or children be in imminent threat of physical harm.") (citation omitted).

On this record, where the EWOC statute is intended to cover a broad range of conduct in order to safeguard the welfare and security of children, it must certainly apply where a defendant commits a DUI with a child passenger and simultaneously engages in multiple forms of unsafe driving by crossing through an oncoming lane of traffic while speeding and reviewing a text message on a cellular phone. *See Krock*, 282 A.3d at 1137-39 (evidence sufficient for EWOC where Krock, travelling with three passengers between the ages of two and seven, operated his truck under the influence of alcohol, in an unsafe manner, which caused his vehicle to crash into a car, pushing that car into a concrete barrier, and causing Krock's truck to roll over onto its side and fly into the air; "When an adult is driving a vehicle in which a child is a passenger, common sense dictates that the driver is supervising that child and, thus, has a duty of care towards those young passengers. This is especially so because the driver controls the speed and direction of the vehicle and regulates the degree of safety in which it is operated.").

In his argument, Appellant fails to review the evidence in the light most favorable to the Commonwealth as dictated by the standard of review for his claim. He alleges that there was no evidence of "tangible indicia of unsafe driving that created a substantial risk of injury that [he] consciously disregarded," noting that there was no evidence "as to erratic driving, driving in the opposite lane, weaving, or any other description of driving." Appellant's

Brief at 14. This assertion ignores that there was direct evidence of unsafe driving in the form of Appellant's own admissions that he had been speeding and reading a text message when his car struck a guide rail. N.T. 5/16/22, 32, 42, 77. It also ignores that there was circumstantial evidence of unsafe and erratic driving supporting Trooper Yetter's conclusion that Appellant drove through the southbound lane of State Route 103 and struck the guide rail on the southbound side of road based on the trooper's observations of the damage to the driver's side of Appellant's car and the tire marks seen in the southbound lane leading to a marked guide rail on the southbound side and where Appellant's disabled car came to a stop. N.T. 5/16/22, 43-44. **_See_** **_Commonwealth v. Brown_**, 48 A.3d 426, 430 (Pa. Super. 2012) ("The Commonwealth may sustain its burden by means of wholly circumstantial evidence").

Appellant appears to discount his admission concerning speeding by referring us, as follows, to Section 3368 of the Vehicle Code which governs the use of speed-timing devices:

> Appellant reminds the reviewing Court that if a speed timing device were used to "clock" Appellant's speed, that Appellant could not be convicted of speeding (if radar was used) unless he was going six (6) miles or more above the posted speed limit. See 75 Pa.C.S.A. §[ ]3368. Moreover, if an electronic device were used to calculate speed, the driver could not be convicted unless he were driving ten (10) miles an hour above the posted speed limit (when the zone is fifty-five (55) miles per hour or less). **_Id._**

Appellant's Brief at 14. His reliance on Section 3368 in these contexts is unavailing because the evidence of his speeding was established by his own admission, there was no allegation of any use of a speed-timing device in this case, and, in any event, we are not addressing a summary traffic offense for speeding.

Appellant also asserts that the trial court erred by suggesting that he was "texting while driving" because "[t]he testimony was clear that [he] merely looked at a text on his cell phone on the front seat of the car and was not actively texting." Appellant's Brief at 15. Putting aside the fact that we conduct *de novo* review of a sufficiency claim and thus we are not limited by the trial court's reasoning, we note there is no practical or legal distinction in these circumstances between whether Appellant was merely reading a text message or both reading and composing text messages at the time of the guide rail collision in this case. Our summary traffic statute prohibiting text-based communications by drivers (of which Appellant was convicted of violating in this case) equally treats the reading, writing, and sending of text messages. 75 Pa.C.S. § 3316(a) ("No driver shall operate a motor vehicle on a highway or trafficway in this Commonwealth while using an interactive wireless communication device to send, read or write a text-based communication while the vehicle is in motion."). The phrase "texting while driving" thus naturally encompasses the act of reading text-based communications while operating a vehicle. Appellant's reading of a text message supported the EWOC conviction – even in the absence of the

composition of a text message – because it constituted a knowing engagement in a distraction from driving that, in addition to speeding and the DUI, created a dangerous situation for Appellant's child.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient for EWOC.  Appellant had an apparent duty of care to his child passenger.  He endangered the physical or psychological welfare of his child when he simultaneously drove ten miles per hour over the posted speed limit while under the influence of a controlled substance and was reading a text message while operating his car, and, as a result of those actions, he crossed over an oncoming lane of traffic, collided with a guide rail, and crossed back over to his initial lane of traffic after sustaining disabling damage to his car.  Appellant was obviously aware that his combined actions created a dangerous situation for his child. ***See, e.g., Commonwealth v. Smith***, 956 A.2d 1029, 1038-39 (Pa. Super. 2008) (*en banc*) (holding that evidence was sufficient for EWOC where, even though defendant was not instructed on the dangers of Shaken Baby Syndome, he violently shook his child with enough force to cause an abusive head trauma which could threaten the child's physical and/or psychological welfare; "[i]t takes nothing more than common sense for an adult … to know that violently shaking an infant child with enough force to cause an abusive head trauma

could threaten the child's physical and/or psychological welfare."). Accordingly, we affirm.[13]

Judgments of sentence affirmed.

Judge Olson joins this Opinion.

Judge McCaffery files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2023

---

[13] The evidence presented provides no basis to distinguish whether Appellant's child was restrained in a child car seat at the time of the guide rail collision. N.T. 5/16/22, 29-30. Under our analysis, the evidence was sufficient for EWOC even assuming *arguendo* that the child was properly restrained in the seat.