J-A03035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM RICHARD NULPH | : | |
| | : | |
| Appellant | : | No. 196 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 9, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003953-2019

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: February 12, 2024**

William Richard Nulph (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of endangering the welfare of children (EWOC).[1]  We affirm.

The trial court detailed the relevant trial evidence in its opinion:

[O]n March 14, 2019, at 2:53 p.m., the Tarentum Police Department requested investigative assistance from Allegheny County Police Homicide Unit for a two (2) year old child found unresponsive in a swimming pool at 517 E 5th Avenue, Borough of Tarentum ([Appellant's] residence).  Detective Mark Restori of the Allegheny County Police Homicide Unit responded to the residence and was advised by Tarentum Police[] Detective Mark Glozowski[] that when his Officers arrived on scene, [Appellant] was administering CPR on his daughter, I[. (the victim)], who was eventually transported to Allegheny Valley Hospital by medics, then flown to UPMC Children's Hospital [Pediatric] Intensive Care Unit and placed on E[CM]O, E[x]tracorporeal Membrane Oxygenation.  ECMO is used when a ventilator [is insufficient to

---

[1] 18 Pa.C.S.A. § 4304(a)(1).

oxygenate] … the lungs. [N.T., 3/29/22 – 4/1/22 (trial), at] 11[1]-[]12. Dr. Rachel Berger of Children's Hospital characterized [the victim's] condition as [being as] close to death as a child can be. [**Id.** at] 118-[]19. [The victim] remained in the intensive care unit through March 18, 2019, and was then stepped down until ultimately being released from Children's Hospital on March 20, 2019.

… [Dr. Berger testified that w]ithout ECMO and the other life-saving steps[, the victim] would have died. [**Id.** at] 111-[]12. Dr. Berger … spoke with [the victim's] parents at the hospital over the concern of the lack of supervision and [the victim's] drowning. [Appellant] told Dr. Berger that he left [the victim] outside while he went inside his home with his 8-month-old daughter. [Appellant] estimated that he was inside [the home for approximately] 2-5 minutes and [he] then came outside and spent another few minutes looking for [the victim,] before he located her at the bottom of the pool. [**Id.** at] 110, 121-[]23.

Detective [] Restori testified that he arrived [at Appellant's] residence on March 14, 2019, after [the victim] had been taken from the scene by paramedics. [Appellant] was at the scene and consented to Detective Restori searching and photographing the scene. [Appellant] was distraught and told [Detective] Restori that it was an unusually warm 70-degree day in March. [Appellant told Detective Restori that Appellant] doesn't usually have the care of the children himself and [that Appellant] decided to take them outside [prior to the victim's drowning]. [Appellant alleged his] 8-month-old [daughter] got fussy, so he went into the house for 30 seconds to get her a bottle. When [Appellant] came back outside, he could not find [the victim,] so he first went around to the front porch to see if she was in the sandbox and then went to the back yard[,] where he eventually found her at the bottom of the pool. [Appellant] was adamant in speaking with Detective Restori that he was only inside the home for 30 seconds before he came back outside to look for [the victim.]

The mobile crime unit photographed the home and yard and documented multiple dangerous items and unsafe conditions for an unsupervised child. In the front yard[,] it was noted that there was no fence between the road and an active railroad track. The back porch where [Appellant] left [the victim] had steps on both sides but no baby gates. The porch had baby items mixed in with dangerous and unsafe items in piles on the floor. There were

extension cords, gas cans, hunting arrows, and razor broadhead[] [arrows,] in addition to other unsafe items[,] on the porch.  [*Id.* at] 183.  In the middle of the yard, located within 3 feet of a child's swing, there was a large piece of railroad track weighing approximately 80 pounds that was unsecured but propped on a piece of railroad tie.  [*Id.* at] 192-[]94.  There was also a hatchet lying unsecured on top of a railroad spike in that area and there was sharp, rusted metal sheeting lying in the yard.  Next to the back porch was the side yard gate that led to the pool.  The latch was broken and there was no gate at the bottom of the stairs to the pool deck.  There was no cover on the pool.  The distance to the ground from the pool deck was 4 foot, 10 inches.

Trial Court Opinion, 5/19/23, at 2-4 (unpaginated) (footnote omitted).

The Commonwealth charged Appellant with one count of EWOC in June 2019.  The matter proceeded to a jury trial in March 2022.  The Commonwealth presented expert testimony from Dr. Berger.  *See* N.T., 3/29/22 – 4/1/22, at 100-19.  Relevantly, on re-cross-examination, the following exchange occurred:

[Defense Counsel:] Was there any other information you received whether [*sic*] the pool was gated or not?

THE COURT:  That was asked and answered multiple times.

Did you have any information regarding the gate, other than what [Appellant] told you?

[Dr. Berger]:  I had information from the District Attorney that this was the most dangerous home she had seen in her whole career.  That's the information I had.

*Id.* at 153.  Defense counsel then moved for a mistrial.  *Id.*  As we explain further below, the trial court ordered Dr. Berger's above response to be stricken from the record and advised the jury not to consider it.  *Id.* at 154.  Defense counsel then renewed his mistrial motion at sidebar, claiming Dr.

- 3 -

Berger's response "was highly prejudicial" and that the trial court's "cautionary instruction to the jury to disregard [Dr. Berger's response] is not going to be sufficient." *Id.* The trial court denied the mistrial motion. *Id.* at 154-55.

At the close of the Commonwealth's case, Appellant moved for judgment of acquittal. *Id.* at 255-57. The trial court denied Appellant's motion. *Id.* at 258. Appellant testified on his own behalf. Appellant also presented testimony from his wife and several character witnesses. The jury found Appellant guilty of EWOC on April 1, 2022. On August 9, 2022, the trial court sentenced Appellant to 36 months of probation. The trial court additionally ordered Appellant to complete parenting classes.

Appellant filed a post-sentence motion (PSM) on August 19, 2022, challenging the verdict as against the weight and sufficiency of the evidence. PSM, 8/19/22, ¶ 5. On January 13, 2023, the trial court entered an order denying the PSM by operation of law. This timely appeal followed.[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents four issues for review:

---

[2] The clerk of courts failed to timely notify Appellant of the order denying the PSM, pursuant to Pa.R.Crim.P. 720(B)(3) (governing denial of post-sentence motions by operation of law). *See also id.* 720(B)(3)(c) (requiring the clerk of courts to give defendant notice of order denying post-sentence motion by operation of law). Given this breakdown in the court's operation, Appellant's notice of appeal is timely. *See Commonwealth v. Perry*, 720 A.2d 734, 735 (Pa. Super. 2003) ("where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances.").

- 4 -

1. Whether there was sufficient evidence to prove [the] *mens rea* of [EWOC]?

2. Whether there was sufficient evidence to prove [the] "course of conduct" element of [EWOC]?

3. Whether the trial court abused its discretion when it denied a mistrial after the Commonwealth's expert, Dr. [] Berger, testified that she had information that the home was the "most dangerous home she had seen in her whole career"?

4. Whether the trial court abused its discretion when it denied Appellant from bringing fact witnesses to testify regarding the fact that the children were never outside at all prior to the incident?

Appellant's Brief at 5.

Appellant first challenges the sufficiency of the evidence supporting his EWOC conviction. ***See id.*** at 13-20. A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017). When reviewing a sufficiency challenge,

> we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, the Commonwealth may sustain its burden solely by means of circumstantial evidence.

***Commonwealth v. Lake***, 281 A.3d 341, 346 (Pa. Super. 2022) (citations and quotations omitted).

The Crimes Code defines EWOC, in pertinent part, as follows:

A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he **knowingly** endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1) (emphasis added). "Knowingly" is defined as

follows:

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

*Id.* § 302(b)(2). "The Commonwealth is not required to prove *mens rea* by

direct evidence. Frequently[,] such evidence is not available. In such cases,

the Commonwealth may rely on circumstantial evidence." ***Commonwealth***

***v. Beasley***, 138 A.3d 39, 48 (Pa. Super. 2016) (citation omitted).

This Court has explained that we

employ[] a three-prong standard to determine whether the Commonwealth has met its burden of establishing the intent element of the EWOC offense. To support a conviction under the EWOC statute, the Commonwealth must establish each of the following elements: (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

- 6 -

*Commonwealth v. Vela-Garrett*, 251 A.3d 811, 815 (Pa. Super. 2021) (citation, ellipses, and brackets omitted).

"It is well-established that child welfare statutes, such as EWOC, are designed to cover a broad range of conduct in order to safeguard the welfare and security of children." *Commonwealth v. Krock*, 282 A.3d 1132, 1138 (Pa. Super. 2022) (citation, quotation marks, ellipses, and footnote omitted). The Pennsylvania Supreme Court has recognized that

> [b]ecause of the diverse types of conduct that must be circumscribed, [] statutes [such as EWOC] are necessarily drawn broadly. It clearly would be impossible to enumerate every particular type of adult conduct against which society wants its children protected. We have therefore sanctioned statutes pertaining to juveniles which proscribe conduct producing or tending to produce a certain defined result rather than itemizing every undesirable type of conduct.

*Commonwealth v. Mack*, 359 A.2d 770, 772 (Pa. 1976) (emphasis and ellipses omitted). "Section 4304 is to be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted." *Vela-Garrett*, 251 A.3d at 815 (citing *Commonwealth v. Taylor*, 471 A.2d 1228, 1231 (Pa. Super. 1984)).

Instantly, Appellant claims the Commonwealth failed to produce sufficient evidence to prove the *mens rea* of EWOC beyond a reasonable doubt. *See* Appellant's Brief at 13-20. Appellant asserts he "was not aware that the circumstances his daughter was in could threaten her physical condition." *Id.* at 15. According to Appellant, he "could not have known that his daughter would go off the porch, through a gate, up the pool stairs and

- 7 -

fall into the pool because they were never really outside[.]" *Id.* (citation to record omitted). Appellant emphasizes that at the time of the victim's drowning, Appellant was the sole supervisor of both the victim and her infant sister, which was "a seldom incident[.]" *Id.* at 15, 16.

Appellant further argues he "did not fail to act or take such meager actions that would not protect his daughter's welfare. This incident was wholly accidental." *Id.* at 16. Appellant claims that after he "searched the entire yard for [the victim] until he found her in the bottom of the pool," he "acted appropriately." *Id.* at 16-17. Appellant points out he retrieved the victim from the pool and "began administering CPR and got paramedics to come…." *Id.* at 17 (citation to record omitted).

The Commonwealth counters that it proved the *mens rea* of EWOC beyond a reasonable doubt. *See* Commonwealth Brief at 14-19. The Commonwealth emphasizes that Appellant

> unquestionably left [the victim] on the porch while he went inside [the home] to give a bottle to his younger daughter, a porch that had no safety gate that would have kept the [victim] from leaving, nor would [Appellant] have been able to see her leave the porch from his purported vantage point in the kitchen[.]

*Id.* at 16 (citations to record omitted); *see also id.* (pointing out that "the latch to the gate that would have kept the [victim] out of the pool area was broken." (citation to record omitted)).

In support of his claim, Appellant heavily relies upon our decision in *Vela-Garrett*, 251 A.3d 811, which, Appellant argues, is "analogous."

- 8 -

Appellant's Brief at 15. *See also id.* at 14-15, 18-19. Contrary to Appellant's claim, we conclude *Vela-Garrett* is distinguishable. There, a jury convicted the defendant of EWOC and driving under the influence, where the defendant drove while purportedly intoxicated by marijuana, with an infant in the car. *Vela-Garrett*, 251 A.3d at 813-14. On appeal, the defendant claimed that the Commonwealth failed to prove the *mens rea* of EWOC. *Id.* at 815-16. We agreed, holding there was no evidence that the defendant acted knowingly, where the police officer who conducted the traffic stop

> did not observe **any** unsafe driving by [the defendant], or any other conduct that would constitute a "tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which was consciously disregarded."

*Id.* at 818 (emphasis in original; citation and brackets omitted).

> Instantly, the trial court concluded in its opinion that

> the evidence was sufficient for the jury to conclude that [Appellant] knowingly violated his duty of care to [the victim,] when he left her without parental supervision in a yard that presented a perilous and dangerous situation for her due to [Appellant's] failure to make it safe.

Trial Court Opinion, 5/19/23, at 5 (unpaginated). We agree. As stated above, Appellant undisputedly left the two-year-old victim unsupervised on a porch that led to the uncovered pool, and there was no functioning safety gate. N.T., 3/29/22 – 4/1/22, at 165-66, 183-84. Further, police discovered numerous dangerous conditions in Appellant's yard. *Id.* at 168, 171-88; *see also* Appellant's Brief at 23 (conceding that the "Commonwealth presented

evidence of dangerous equipment and materials scattered about Appellant's yard.").

Based on the foregoing, we conclude the Commonwealth proved the *mens rea* of EWOC beyond a reasonable doubt. ***See***, ***e.g.***, ***Commonwealth v. Wallace***, 817 A.2d 485, 492 (Pa. Super. 2002) (finding evidence sufficient to prove *mens rea* of EWOC where the defendant's home had "squalid living conditions [that] threatened his children's welfare," "water running into the electrical box creating a fire hazard," and "no working furnace for heat"). ***Cf.*** ***Vela-Garrett***, 251 A.3d at 818; ***Commonwealth v. Howard***, 257 A.3d 1217, 1228-29 (Pa. 2021) (finding evidence insufficient to sustain EWOC conviction where the defendant allowed her three-year-old daughter to ride in a car-for-hire without a child restraint or child safety seat; holding the defendant's conduct did not offend the common sense of the community). Thus, Appellant's first issue does not merit relief.

In his second issue, Appellant claims the evidence does not support his EWOC conviction being graded as a first-degree felony,[3] where the

_____

[3] The EWOC statute provides the following with respect to grading:

> **(1)** Except as provided under paragraph (2), the following apply:

>> **(i)** An offense under this section constitutes a misdemeanor of the first degree.

*(Footnote Continued Next Page)*

"Commonwealth failed to provide sufficient evidence to prove that Appellant

engaged in a 'course of conduct' … [of] endangering the welfare of his child."

Appellant's Brief at 21.  Appellant claims,

> [t]he Commonwealth presented evidence of dangerous equipment
> and materials scattered about Appellant's yard.  These facts are
> irrelevant to the conduct that occurred.  Appellant would argue
> that a nexus must exist between the dangerous activity or
> circumstance(s) and the injury that occurred to [the victim].
> These facts regarding the equipment and materials scattered
> about Appellant's yard cannot be a basis for "course of conduct"
> because the conduct that the[ Commonwealth] allege[s] had
> nothing to do with what occurred to [the victim].

*Id.* at 23-24 (emphasis and citation to record omitted).

_____

> **(ii)** If the actor engaged in a course of conduct of
> endangering the welfare of a child, the offense constitutes a
> felony of the third degree.
>
> **(iii)** If, in the commission of the offense under subsection
> (a)(1), the actor created a substantial risk of death or
> serious bodily injury, the offense constitutes a felony of the
> third degree.
>
> **(iv)** If the actor's conduct under subsection (a)(1) created
> a substantial risk of death or serious bodily injury and was
> part of a course of conduct, the offense constitutes a felony
> of the second degree.
>
> **(2)** The grading of an offense under this section shall be increased
> one grade if, at the time of the commission of the offense, the
> child was under six years of age.

18 Pa.C.S.A. § 4304(b).  "Although the EWOC statute does not define 'course of conduct,' the phrase is clearly used in that context to differentiate the penalties for single and multiple endangering acts."  ***Commonwealth v. Kelly***, 102 A.3d 1025, 1031 (Pa. Super. 2014) (*en banc*).

- 11 -

Appellant cites this Court's decision in **Commonwealth v. Popow**, 844 A.2d 13 (Pa. Super. 2004), where we stated:

[T]he logical interpretation of the legislative language in [18 Pa.C.S.A. § 4304](b) is that it is designed to punish a parent who over days, weeks, or months, abuses his children, such as repeatedly beating them or depriving them of food. The statute was clearly not designed for an event that occurs within minutes, or, perhaps in a given case, even hours.

*Id.* at 17 (internal citation omitted); Appellant's Brief at 23 (citing **Popow** and stating, "Appellant's case occurred within a few minutes, if not seconds."). According to Appellant, the "purpose of the 'course of conduct' element was enacted to make criminal conduct that endangers or … depletes the welfare of a child. It was not meant for accidental, random incidents like the one that occurred in Appellant's case." Appellant's Brief at 25.

The Commonwealth counters that it presented the jury with sufficient evidence to find that Appellant endangered the welfare of the victim through a "course of conduct," and as a result, Appellant's EWOC conviction was properly graded as a first-degree felony. *See* Commonwealth Brief at 20-24. The Commonwealth emphasizes the above-mentioned dangerous conditions present in Appellant's yard. *Id.* at 23-24. The Commonwealth claims that "even if the jury were to have focused only on [Appellant's] behavior on March 14, 2019, there was [] sufficient evidence of a course of conduct" where Appellant, "by his own admission, left the victim alone outside on two separate occasions…." *Id.* at 23 (emphasis and citation omitted). The Commonwealth

further argues that *Popow* is unavailing to Appellant, where subsequent appellate decisions have "eroded" *Popow*. *Id.* at 21.

"[A] claim that the [trial] court improperly graded an offense for sentencing purposes implicates the legality of the sentence." *Commonwealth v. Hoffman*, 198 A.3d 1112, 1123 (Pa. Super. 2018) (citation omitted). Accordingly, "[o]ur standard of review is *de novo*, and the scope of our review is plenary." *Id.*

We are guided by our unpublished memorandum[4] in *Commonwealth v. Velez-Diaz*, 301 A.3d 875, 643 MDA 2022, 2023 WL 3813836 (Pa. Super. filed June 5, 2023) (unpublished memorandum). There, the defendant fled police during an attempted traffic stop, while driving a truck in which his girlfriend and her three-year-old son were passengers. *Id.* (unpublished memorandum at 3-4). The defendant ignored his girlfriend's repeated entreaties to stop the truck because she feared for her life. *Id.* (unpublished memorandum at 4). The defendant crashed the truck during the chase and fled the scene on foot, leaving the child in the truck. *Id.*

On appeal, the defendant claimed that the evidence did not support the jury's conviction of EWOC being graded as a first-degree felony under 18 Pa.C.S.A. § 4304(b), as the evidence failed to establish a course of conduct.

---

[4] Pursuant to Pa.R.A.P. 126(b)(1)-(2), unpublished non-precedential memorandum decisions of this Court filed after May 1, 2019 may be cited for their persuasive value.

*Id.* (unpublished memorandum at 6, 9). Citing ***Popow***, the defendant argued his conduct on the night of the crash constituted a "single act" and that "this Court has held that a 'single act' cannot amount to a 'course of conduct[.]'" *Id.* (unpublished memorandum at 9).

This Court held ***Popow*** was distinguishable and that the defendant had engaged in a course of conduct:

> First, the [] language from ***Popow*** concerning the timing of events was not directly relevant to the holding in that case. Rather, the ***Popow*** Court's holding was based on the conclusion that the Commonwealth failed to allege a course of conduct in the criminal information, failed to present evidence of a course of conduct at trial, and that the trial court did not instruct the jury on course of conduct pursuant to 18 Pa.C.S. § 4304(b). ***Popow***, 844 A.2d at 18 (holding that "course of conduct" is "a jury question, that impacts the grading of the offense. We cannot merely assume the jury found this additional fact when no evidence of it was presented at trial and no mention of it was made in the jury's charge.").
>
> Recently, in ***Commonwealth v. Kohr***, 1252 MDA 2018, 219 A.3d 235, 2019 WL 2486762 (Pa. Super. filed Jun. 14, 2019) (unpublished mem.), a panel of this Court addressed the course of conduct language from ***Popow***. In ***Kohr***, this Court noted that although ***Popow*** mentioned the amount of time in which a course of conduct may occur under the EWOC statute, the ***Kohr*** Court did not view that language from ***Popow*** as binding. … *Id.* [] at *6 n.7. The ***Kohr*** Court stated: "[w]hile the ***Popow*** Court **implied** that multiple days of abuse was required to find a course of conduct, we do not read the statute as narrowly." *Id.* (emphasis added). The ***Kohr*** Court then explained that the Standard Suggested Jury Instructions for EWOC, with the additional factor of a course of conduct, charges the jury that "[a] course of conduct means a pattern of actions composed of more than one act over a period of time, **however short**, evidencing a continuity of conduct[.]" *Id.* (quoting Pa. SSJI (Crim), § 15.4304B) (some formatting altered and emphasis added). Upon review, we find the ***Kohr*** Court's conclusion is persuasive and conclude that a course of conduct may occur over a period of time

- 14 -

"however short." **See Kohr**, 219 A.3d 235, 2019 WL 2486762 at \*6, n.7.

**Velez-Diaz**, (unpublished memorandum at 10-12) (footnotes omitted). The **Velez-Diaz** Court held that the defendant's

act of fleeing from police and crashing his vehicle, which was then followed by [the defendant] abandoning the vehicle with the child still inside and running away on foot, constituted more than a single act and established a course of conduct under Section 4304(b).

**Id.** (unpublished memorandum at 13).

Upon review of the record and the law, we conclude the evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to establish a course of conduct. Initially, the Commonwealth specifically alleged a course of conduct in the criminal information. Criminal Information, 6/27/19. Further, the trial court defined "course of conduct" for the jury during closing instructions, consistent with the Pennsylvania Suggested Standard Criminal Jury Instructions. N.T., 3/29/22 – 4/1/22, at 448 ("A course of conduct means a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuation of conduct."); Pa. SSJI (Crim), §15.4304B; **cf. Popow**, 844 A.2d at 18 (holding a trial court must instruct the jury with respect to course of conduct in order to implicate the relevant provisions of 18 Pa.C.S.A. § 4304(b), as this is a factual question for the jury). We are persuaded by the Commonwealth's argument that the evidence established a course of conduct where Appellant,

- 15 -

by his own admission, left the victim alone outside **on two separate occasions**—first, when he took his younger daughter inside after she had begun to "get[ ] a little fussy," and then again a short time later when he went back inside to give that same girl a bottle. Thus, even if the jury were to have focused only on [Appellant's] behavior on March 14, 2019, there was indeed sufficient evidence of a course of conduct….

Commonwealth Brief at 23 (emphasis in original); *see also* N.T., 3/29/22 – 4/1/22, at 274-77 (Appellant's testimony). Based on the foregoing, Appellant's second issue does not merit relief.

In his third issue, Appellant claims that the trial court improperly denied his mistrial motion, based on Dr. Berger's trial testimony that she "had information from the District Attorney that this was the most dangerous home she had seen in her whole career." Appellant's Brief at 27 (quoting N.T., 3/29/22 – 4/1/22, at 153). According to Appellant, Dr. Berger's remark was "wholly improper, [] highly prejudicial and a mistrial should have been granted as the [trial court's] curative instruction did not cure this error." *Id.* at 27. Appellant claims that the "jury was left to abdicate their factfinding ability and leave it to Dr. Berger. She could not opine what the condition of the house was since she never actually saw it." *Id.* at 33; *see also id.* at 32 (arguing that "Dr. Berger's understanding of what led to the drowning" is "only based upon what other people tell her").

The Commonwealth counters the trial court properly denied Appellant's mistrial motion, where the court immediately struck Dr. Berger's comment from the record and promptly and adequately instructed the jury to disregard

the comment. *See* Commonwealth Brief at 25-30. The Commonwealth claims that Dr. Berger's comment "did not deprive the [A]ppellant of a fair trial" and "any potential prejudice [from the comment] was overcome" by the trial court's curative instruction. *Id.* at 30.

"It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citation omitted); *see also Commonwealth v. Szakal*, 50 A.3d 210, 218 (Pa. Super. 2012) ("the decision to declare a mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of discretion." (citation and brackets omitted)). "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted). "A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Szakal*, 50 A.3d at 218 (citation, ellipses, and brackets omitted). However, a mistrial is not necessary where cautionary or curative instructions are adequate to overcome any potential prejudice. *Commonwealth v. Spotz*, 716 A.2d 580, 593 (Pa. 1998); *see also Commonwealth v. Leap*, 222 A.3d 386, 392 (Pa. Super. 2009) ("When a trial court gives adequate

cautionary instructions to the jury, it is not necessary for the court to declare a mistrial."). The law presumes that a jury will follow the trial court's instructions. **Commonwealth v. Speight**, 854 A.2d 450, 458 (Pa. 2004).

Instantly, we conclude that the trial court did not err in denying Appellant's mistrial motion. After Dr. Berger's improper comment, the trial court immediately ordered that it be stricken from the record and instructed the jury to disregard it. N.T., 3/29/22 – 4/1/22, at 154. Specifically, the trial court stated:

> Ladies and gentlemen, since that didn't affect this witness's opinion, I'm going to order that stricken from the record. You are not to consider that testimony in any way. Okay?
>
> So, remember earlier in the trial, I told you anything that I've ordered stricken from the record, you are not to consider.[5] So I'm going to ask that you not consider that at all.

**Id.** (footnote added). The trial court responded to defense counsel's mistrial motion, and his claim that the court's curative instruction was inadequate to cure any prejudice, by stating, "I have to trust the jury is going to follow my [cautionary] instructions as I instructed them to." **Id.** at 155. Further, in the trial court's closing instructions, it again told the jury that it

> must not consider any testimony … to which I have sustained an objection or which I have ordered stricken from the record.

---

[5] The trial court instructed the jury as follows during opening instructions: "If I order something stricken from the record, you are not to consider that. You are not to consider any evidence that I have ordered stricken." N.T., 3/29/22 – 4/1/22, at 18-19.

As you will recall, I did order some testimony stricken from the record[,] and you are not to consider that testimony.

*Id.* at 437.

It is presumed that the jury followed the trial court's instructions. *Speight*, 854 A.2d at 458. Contrary to Appellant's claim, the trial court's timely curative instruction to disregard Dr. Berger's improper comment was not inadequate to cure any potential prejudice to Appellant. Thus, a mistrial was not warranted. *Leap*, 222 A.3d at 392 (a mistrial is unnecessary where the trial court gave the jury adequate cautionary instructions). Accordingly, Appellant's third issue does not merit relief.

In his final issue, Appellant claims that the trial court abused its discretion when it denied his request to "present fact witnesses to testify to personal knowledge that [Appellant's] children were never outside prior to the incident. These facts were relevant to the case to rebut elements" of the EWOC charge. Appellant's Brief at 35; *see also id.* at 41 (asserting the "fact witnesses would have rebutted at least the element of 'course of conduct'" under 18 Pa.C.S.A. § 4304(b)). According to Appellant, the "Commonwealth would not have been prejudiced by the fact witnesses testifying to how seldom [Appellant's] children were outside." *Id.* at 43.

The Commonwealth counters that the trial court did not err in precluding this testimony because it was irrelevant. *See* Commonwealth Brief at 34-35. The Commonwealth disputes Appellant's claim that the proposed testimony could tend to disprove "course of conduct," arguing that

the course of conduct engaged in by [Appellant] was the dangerous condition in which he kept his yard and pool, not whether or not he was in the habit of letting his children play there.

*Id.* at 35.

Our "standard of review for a trial court's evidentiary rulings is narrow." *Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted). Rulings "on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." *Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

Further,

[t]he threshold inquiry with admission of evidence is whether evidence is relevant." *Commonwealth v. Collins*, 888 A.2d 564, 577 (Pa. [] 2005). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. [] 2002). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

*Jackson*, 283 A.3d at 817-18 (some citations modified).

Upon review, we conclude the trial court did not abuse its discretion in limiting Appellant's proposed fact witness testimony, as it was not relevant.

- 20 -

We agree with the trial court's reasoning at trial, wherein it explained to defense counsel,

> we are talking about that day, and I'm going to try to orient you to March 14th, 2019. The allegation is on that date, … [the victim] was left unsupervised and drown[ed] in the pool. There is no relevance to what went on in the past. So those witnesses aren't fact witnesses.

*Id.* at 260-61. Whether Appellant's neighbors had ever observed the victim and her sister in Appellant's yard prior to March 14, 2019, was not relevant to any issue before the jury. Thus, Appellant's final issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/12/2024